## Dulles and others *against* De Forest and others.

*A* made a note for 2000 dollars, which was signed also by *B*, as the surety of *A*, payable to the order of *C & D*, partners, and delivered it to *C & D*, under an agreement with *A* and *B*, that *C & D* should hold the note, as a security to them, for any advance of money to be made by them to *A*, to the amount of 2000 dollars, to aid *A* in a certain kind of business, and also as security to any other person or persons, to whom *C & D* might indorse such note, for any advance to be made by such indorsees, for the same purpose. *C & D*, while they held the note, never made any advance on it ; but having formed a new partnership, by admitting *E* into the concern with them, *C & D* indorsed the note to such new partnership, and they advanced said sum to

*A*, to aid him in said business, which has never been paid. Held, that upon these facts, *C*, *D* & *E* were entitled to recover on the note.

*C*, *D* & *E*, having received the goods of *A* for sale on commission, and having advanced to *A* the sum of 2000 dollars, to aid him in a branch of manufacture distinct from his general business, by accepting his drafts on time, and afterwards paying them, blended, in one general account upon their books, the amount so advanced to *A* with the avails of the goods of *A* sold by them; such acceptances being charged, when they were given, and not when paid; and such account was, from time to time, rendered by them to *A*. Neither party having made any specific application of the moneys arising from the sale of *A's* goods to the payment of the sum so advanced; it was held, 1. that the presumption of law from the mode of keeping the account, was, that the payments were to be applied to the oldest items on the opposite side; but 2. that this rule, being founded on the presumed intention of the parties, is applicable only, where there is no evidence sufficient to show a different intention; and where there is, that intention, when ascertained, must govern the application; 3. that in this case, the intention of the parties might be gathered, not only from the mode of keeping the account, but from the course of dealing between the parties, the object for which the note was given, and suffered to remain in the hands of the holders, and from all the circumstances of the case.

Where a party requests the court to instruct the jury as to the effect of certain facts, which he claims to have proved; and the court submits the case to the jury upon those facts, without giving any instruction as to their effect; and the jury find the facts in opposition to the claim of the party; such omission of the court is not a ground for a new trial.

*New-Haven, July, 1848.*

*Dulles v. DeForest.*

This was an action brought by *Dulles, Aertsen & Fisher*, as the indorsees of a promissory note, against *William De Forest & Co.* and *Milo Lewis*, as the makers.

The cause was tried, at *New-Haven, January* term 1848, before *Hinman*, J.

On the trial, the plaintiffs, in support of their declaration, offered in evidence the note therein described, which was as follows:

$2000.         "*Naugatuck, Oct. 25th*, 1842.

On demand, we promise to pay to the order of *Dulles & Fisher*, two thousand dollars, value rec'd.

        *Wm. De Forest & Co.*
        *Milo Lewis.*"

It was indorsed thus: "Pay to the order of *Dulles, Aertsen & Fisher*,         *Dulles & Fisher*."

The signatures were admitted to be genuine.

The defendants claimed to have proved, that the note in question was made by them, at the time of its date, as a collateral security or guaranty to *Joseph H. Dulles* and *Francis*

*A. Fisher*, two of the present plaintiffs, then commission merchants in company, under the name of *Dulles & Fisher*, in the city of *Philadelphia*, and the agents of *Wm. De Forest & Co.* for the sale of satinets, made and consigned to them for sale on commission, for a loan or advancement of 2000 dollars, to be made by them, to *Wm. De Forest & Co.*, to assist them in the prosecution of certain *India-rubber* business; and that *Milo Lewis* signed the note as surety for *Wm. De Forest & Co.* : that such loan or advancement was made, by *Dulles & Fisher*, by accepting two drafts of *Wm. De Forest & Co.* on them, for 1000 dollars each, payable five months from their date, one dated *Nov. 7th*, and the other *Nov. 12th*, 1842; which acceptances were charged, by *Dulles & Fisher*, at the time of their acceptance, to *Wm. De Forest & Co.*, on their books, in their general account with them, as agents for the sale of satinets; and that such acceptances were the sole consideration of the note : that when they became due, they were taken up, by *Wm. De Forest & Co.*, by cash transmitted by them to *Dulles & Fisher*, which was credited to *Wm. De Forest & Co.*, by *Dulles & Fisher*, in their general account; and two other drafts, for 1000 dollars each, at five months, were then drawn by *Wm. De Forest & Co.*, on *Dulles & Fisher*, and by them accepted, and charged in their general account, as before; and these last-mentioned acceptances, when they fell due, were, in like manner, paid and credited, and new acceptances made and charged, during the existence of the firm of *Dulles & Fisher*.

On the 1st of *November* 1843, the firm of *Dulles & Fisher* was dissolved, and the firm of *Dulles, Aertsen & Fisher*, the plaintiffs, was formed, consisting of said *Dulles & Fisher* and *James M. Aertsen;* and from that date to the 1st of *April*, 1846, the plaintiffs were the agents of *Wm. De Forest & Co.* for the sale of their satinets. At that time, the balance of account due to *Dulles & Fisher*, from *Wm. De Forest & Co.*, including the two last-mentioned acceptances of 1000 dollars each, which were out-standing, was 2638 dollars, 45 cents. By agreement between *Dulles & Fisher*, *Wm. De Forest & Co.*, and the plaintiffs, such balance of account was transferred to the plaintiffs, and debited to *Wm. De Forest & Co.*, on the books of the plaintiffs, and the accounts and dealings

of *Wm. DeForest & Co.*, with *Dulles & Fisher*, were adjusted and closed.   There was no evidence that *Lewis* ever had notice of, or consented to, the renewal of said acceptances, or the transfer of the account due to *Dulles & Fisher* to the plaintiffs, or the subsequent dealings and transactions of *Wm. De Forest & Co.* with the plaintiffs.

The plaintiffs claimed to have proved, that the note in suit was, at or about the time of the formation of their copartnership, indorsed over to them, by *Dulles & Fisher ;* but there was no evidence that this was done, with the knowledge or consent of *Lewis.*

The plaintiffs further claimed to have proved, that when the drafts last accepted by *Dulles & Fisher*, matured, they were taken up by *Wm. De Forest & Co.*, by cash remitted by them to the plaintiffs, to meet the same ; and such cash was credited, by the plaintiffs, to *Wm. De Forest & Co.*, on their general account, with their other transactions and dealings with that firm, as agents for the sale of their satinets ; and new drafts were drawn by *Wm. De Forest & Co.*, on the plaintiffs, and were by the plaintiffs accepted, and charged, at the time of acceptance, in their general account, to *Wm. De Forest & Co.*

It appeared from the accounts current, rendered semiannually by the plaintiffs, to *Wm. De Forest & Co.*, of their dealings and transactions, which accounts, it was admitted, were true transcripts of the plaintiffs' whole account with *Wm. De Forest & Co.*, from the 1st of *November* 1843, to the 1st of *April* 1846, that in the account current rendered *July* 1st 1844, *Wm. De Forest & Co.* were debited, as of the 11th of *March* 1844, with "bills payable, due *August* 7th, 1844, 1000 dollars," marked "accommodation," which was the only one thus marked in the account.   In the next account current, rendered *December* 23d, 1844, they were debited with "bills payable, *February* 8th 1845, 1000 dollars," marked "accommodation," which was the only one thus marked in that account.   In the next account current, rendered *June* 24th 1845, they were debited with "bills payable, *July* 9th 1845, 1000 dollars," marked "accommodation," which was the only one thus marked in that account.   In the succeeding accounts current of the plaintiffs, no distinction

was kept up, or memorandum made, of accommodation paper.

The plaintiffs claimed to have proved, that at some time anterior to the 1st of *April* 1846, they had retired said accommodation drafts, by taking them up ; after which the renewals ceased.

From the account current of the plaintiffs, rendered *July* 1st 1844, it appeared, that the whole balance due from *Wm. DeForest & Co.* to the plaintiffs, at that date, including all accommodation paper, was 1450 dollars, 64 cents. It further appeared from the accounts current, that from the 1st of *November* 1843, to the first of *April* 1846, the plaintiffs had sold for *Wm. DeForest & Co.* large quantities of satinets, on commission, the net avails of which, amounting to more than 44,000 dollars, had been credited to them by the plaintiffs, in their general account, from time to time ; and no application of the avails were made, by the plaintiffs, or by *Wm. DeForest & Co.*, except by the credit on general account, as above stated. The balance due to the plaintiffs from *Wm. DeForest & Co.*, on the 24th of *June* 1845, when the distinction of accommodation ceased to appear in the accounts current, was 8756 dollars, 78 cents ; and the avails of cash, and of goods, sold and credited by the plaintiffs, to *Wm. DeForest & Co.*, after that date, up to the 1st of *April* 1846, on general account, was more than 14,000 dollars. It was admitted, that the balance due to the plaintiffs from *Wm. DeForest & Co.*, on the 1st of *April* 1846, was 6420 dollars, 17 cents ; and that, on or about the 9th of *April* 1846, *Wm. DeForest & Co.*, failed, and became, and now are, insolvent.

The defendants claimed, that upon the facts so claimed by them, if they should be found to be true, the law was so,

1. That the renewal, by *Dulles & Fisher*, of the two original acceptances, was a discharge of the guaranty, so far as *Lewis*, the surety, was concerned.

2. That the cancelment and discharge of the acceptances of *Dulles & Fisher*, by the new acceptances of the plaintiffs, was an extinguishment of the original loan, and a discharge of the guaranty.

3. That as the the guaranty was to *Dulles & Fisher*, and for their security, the transfer of the balance of their account, including said acceptances to the plaintiffs, with the

assent of *Wm. DeForest & Co.*, was a payment and discharge of all claims of *Dulles & Fisher* against *Wm. DeForest & Co.*, and consequently, a discharge of the guaranty.

4. That it was not competent for *Dulles & Fisher* to indorse over to the plaintiffs the note in suit, without the consent of *Lewis ;* and that it was not available in the hands of the plaintiffs.

5. That after the plaintiffs had, in their account with *Wm. DeForest & Co.*, ceased to make the distinction of " accommodation," and merged the same in their general account, as the avails of goods sold by them, after that date, and by them credited to *Wm. DeForest & Co.*, on general account, was much larger than the whole balance due when the account was so merged, and no specific application being made, by either party, the law would apply such credits to the oldest indebtedness ; and thereby the guaranty was discharged.

6. That the plaintiffs having rendered their accounts, in the manner above stated, are now estopped by them, and the law would make the application.

7. That the balance due to the plaintiffs from *Wm. De Forest & Co.*, having been, on the 1st of *July* 1844, reduced to 1450 dollars, 64 cents, the guaranty could not be extended to any subsequent increase of that indebtedness.

The plaintiffs claimed to have proved, that the note in suit was made and delivered to *Dulles & Fisher*, to secure to them any advance of money, to the amount of 2000 dollars, which they might make to *Wm. DeForest & Co.*, to aid them in their *India-rubber* business ; and also, to secure any person or persons, to whom *Dulles & Fisher* might indorse the note, for any advance of money, to the amount of 2000 dollars, which such indorsees might make to *Wm. DeForest & Co.*, to aid them in the *India-rubber* business : that during the copartnership of *Dulles & Fisher*, no advance of money was made by them ; but that, upon the formation of the partnership by the plaintiffs, in *November* 1843, said note was indorsed over, by *Dulles & Fisher*, to the plaintiffs ; and a short time before the 1st of *April* 1846, the plaintiffs advanced to *Wm. DeForest & Co.*, the sum of 2000 dollars, on the *India-rubber* account. The plaintiffs thereupon claimed, that the court should charge the jury, that if they should find the facts as claimed by the plaintiffs, said note, from the time of

Dulles
*v.*
DeForest.

such advance by the plaintiffs, on the *India-rubber* account, became an available security in their hands, upon which they were entitled to recover for the money so advanced by them, with interest thereon, from the time it was so advanced.

The court charged the jury, that the note, being negotiable, was, *prima facie*, a promise to pay any *bona fide* holder, who should take it fairly, in the course of business, and pay value for it : that if the plaintiffs had so taken it, and had advanced the money upon it, they might recover the amount so advanced, unless there was some agreement or understanding of the parties, that the note should only stand as a security or guaranty for a loan to be made by *Dulles & Fisher* to *Wm. De Forest & Co.*, as claimed by the defendants : that if there was such an agreement, by the terms or fair understanding of which, *Dulles & Fisher* were precluded from indorsing or negotiating the note, then, inasmuch as the plaintiffs must have had knowledge of it, they could not recover : that if there was no such agreement or understanding of the parties, but the object for which the note was given, was such as was claimed by the plaintiffs, then, if the plaintiffs advanced money upon the note, as claimed by them, they were entitled to recover it, in this action, unless they had otherwise been paid for it.

In regard to the application of the moneys arising from the sales of the goods of *Wm. De Forest & Co.* in the plaintiffs' hands, as commission merchants, the court instructed the jury, that if there was no evidence to satisfy them, that either party had made any specific application of those moneys to the payment of the note, or of the moneys claimed to have been advanced upon it, the jury had a right to find, or imply from all the circumstances of the case, what application was intended by the parties : that the presumption of law from the amalgamation of the accommodation paper account, and the account for moneys advanced thereon, with the general account of the plaintiffs against *Wm. De Forest & Co.*, would be, that the payments were to be applied to the oldest items of the whole account, as claimed by the defendants : but that, in this case, the jury had the right to take into consideration the course of dealings between the parties, the object for which the note, in their opinion, was given, and suffered to remain in the hands of *Dulles & Fisher*, and of the plaintiffs ;

and if from all the circumstances, the jury should think, that it was not the intention of the parties that the money advanced on this note should not be paid, but that the note should remain as security for it ; then the note was not paid, and the plaintiffs were entitled to recover.

The jury returned a verdict for the plaintiffs, to recover the sum of 2332 dollars, 75 cents, damages, and their costs ; and thereupon the defendants moved for a new trial.

*Dutton* and *Buel,* in support of the motion, contended, 1. That the transfer, on the 1st of *November* 1843, of the balance of account due *Dulles & Fisher* from *Wm. DeForest & Co.,* to the plaintiffs, which balance included the loan or accommodation for which the note in suit was given as a guaranty, was, in fact and in law, a payment and discharge of all claims of *Dulles & Fisher* against *Wm. De Forest & Co.,* and discharged the guaranty. *Chitt. Cont.* 752. *Eyles* v. *Ellis,* 4 *Bing.* 112. (13 *E. C. L.* 365.) *Bodenham* v. *Purchas,* 2 *B. & Ald.* 39.

2. That the substitution of the acceptances of the plaintiffs for the old acceptances of *Dulles & Fisher,* for which the note in suit was given as a guaranty, without the consent of *Lewis,* was a novation or delegation of the original loan or accomodation, which discharged the guaranty. *Chitt. Cont.* 528, 9. *Miller* v. *Stuart,* 9 *Wheat.* 680. *Norton* v. *Roberts,* 4 *Monroe,* 494. *Brown* v. *Wright,* 7 *Monroe,* 398. *Sneed* v. *White,* 3 *J. J. Marsh.* 680.

3. That it was not competent for *Dulles & Fisher* to indorse over to the plaintiffs the note in suit, without the consent of *Lewis,* the surety ; and it is not available in the hands of the plaintiffs, with notice, for any purpose. *Chitt. Cont.* 524. *Weston* v. *Barton,* 4 *Taun.* 673.

4. That the plaintiffs having merged the accommodation paper in their general account, and the avails of goods sold by them and cash received after that date, and by them credited to *Wm. De Forest & Co.,* on general account, being much larger than the whole balance due when so merged, and no specific application having been made by either party, the law will apply such credits to the oldest indebtedness. *United States* v. *Kirpatrick,* 9 *Wheat.* 720. *Fairchild* v. *Holly,* 10 *Conn. R.* 175. *Postmaster-General* v. *Furber,*

New-Haven, July, 1848.

Dulles
v.
DeForest.

4 *Mason*, 333. *Bodenham* v. *Purchas*, 2 *B. & Ald.* 39. *Chitt. Cont.* 756, 7. *Cremer* v. *Higginson*, 1 *Mason*, 324. 2 *Greenl. Ev.* 434, *in not.*

5. That the plaintiffs having so rendered their accounts, are estopped thereby from averring the contrary, and the law will make the application upon them. *Devaynes* v. *Noble*, 1 *Meriv.* 528. 608. 2 *Wash. C. C.* 47.

6. That the balance due the plaintiffs from *Wm. DeForest & Co.* having, on the 1st of *July* 1844, been reduced to 1450 dollars, 64 cents, the guaranty could not be extended to any subsequent increase of that indebtedness.

*C. A. Ingersoll* and *A. Blackman*, contra, contended, 1. That as the court charged the jury, that if the facts regarding the purpose of giving the note, the payment of the drafts, and the renewal of them, without the consent of *Lewis*, were so as the defendants claimed them to be, the plaintiffs could not recover, the defendants have nothing to complain of, in this part of the charge.

2. That where two or more debts exist in favour of a creditor against a debtor, and a payment is made by the debtor, he has a right to direct to which debt the payment shall be applied. If the debtor does not direct to which debt the payment shall be applied, then the creditor has a right to apply the payment to which debt he pleases. If no application is made, either by the debtor or the creditor, then the application is to be made according to the presumed intention of the parties.

3. That where there are two or more debts *of the same nature* against the person who makes the payment, the presumed intention of the parties is, that the payment shall apply to the oldest debt. But

4. That no such presumed intention is to be had, unless the debts are of the same nature. For where a creditor has a security for one debt, and no security for another, the law will apply the payment to that debt for which he has no security, or the least security, leaving that for which he has the best security, unpaid. *Chester* v. *Wheelwright*, 15 *Conn. R.* 562. *Peters* v. *Anderson*, 5 *Taun.* 596. *Field* v. *Holland*, 6 *Cranch*, 8. 28. *Brewer* v. *Knapp*, 1 *Pick.* 332. *Baker* v. *Stackpole*, 9 *Cowen*, 420. *Stone* v. *Seymour*, 15 *Wend.* 19.

*Clark* v. *Burdett*, 2 *Hall*, 197.  *Kirby* v. *Duke of Marlborough*, 2 *Mau. & Selw.* 18.

5. That the 2000 dollars, borrowed for the *India-rubber* business, being intended as a permanent loan—the note given for this loan outstanding, never having been taken up—these, and other circumstances in the case, show, that the parties, when the payments were made, did not intend to apply them to the satisfaction of this note.

6. That the finding of the jury has settled the question on this point. They have found, that it was the intention of the parties, that the moneys received by the plaintiffs, or any other payments made by *Wm. De Forest & Co.*, should not be applied to the payment of this note. They have also found, that on the 21st of *July* 1844, when the balance of the general account due the plaintiffs was 1450 dollars, 64 cents, no part of the consideration of this note had been advanced.

STORRS, J. The liability of the defendants to the plaintiffs on the note in question, by reason of the acceptance or payment, by the latter, of the drafts drawn on them, by the former, depends entirely on the terms of the original agreement between the defendants and the firm composed of *Dulles & Fisher*, when said note was executed. Whatever agreement was subsequently made between the firm of *Wm. De Forest & Co.* and *Dulles & Fisher*, or the plaintiffs, as to the purpose for which the note should be held or used, by either of them, was not binding on the defendants, because, as must be assumed on this motion, *Lewis*, one of the defendants, signed the note merely as a surety for *Wm. De Forest & Co.*, and was not a party, and did not assent, to such subsequent agreement. Although the note is absolute in its terms, it is competent for the defendants, in an action brought on it, either by the payees, or by their indorsees, with notice of the original agreement under which it was made, to avail themselves of any defence growing out of such agreement, and consequently, to show what were the terms of that agreement; and as the plaintiffs, who here claim as indorsees of the note, consist in part of two of those payees, *Dulles & Fisher*, they must be deemed to have had such notice, when the latter endorsed it to them.

If, as was claimed by the defendants, on the trial, the

agreement between the defendants and *Dulles & Fisher,* when the note was made, was, that it should be held as a security only for a loan or advancement to the firm of *Wm. De Forest & Co.,* whether in cash or by acceptances, to be made by *Dulles & Fisher* alone, it could not be made available by the latter, or any other persons to whom they might indorse it, with notice of such agreement, as a security for a loan or advancement by any other persons, for the plain reason, that it would be contrary to the original understanding and intention of the parties, which could not be subsequently varied, without their assent. And, for the same reason, if, as the defendants further claimed, it was also a part of that agreement, that the note should be held as security for only a single loan, or advancement of a particular sum, it could not be made available as security for any successive loans; and, in this case, a payment by *Wm. De Forest & Co.* of the first, would extinguish all liability on the note. These principles, which are undisputed, were, as requested by the defendants, sanctioned in the charge of the court below to the jury.

The plaintiffs, however, claimed, that the agreement was, that the note should be held by *Dulles & Fisher,* as a security to them for any advancement of money, to the amount of two thousand dollars, to *Wm. De Forest & Co.,* to aid them in their *India-rubber* business, and also as a security to any other person or persons to whom *Dulles & Fisher* might indorse said note, for any advance of that sum, which the persons to whom they should indorse it might make to *Wm. De Forest & Co.,* in that business; that *Dulles & Fisher* never made any such advancement on the note, but that they indorsed it to the plaintiffs, after the formation of the partnership between the plaintiffs; and that thereupon the latter advanced said sum to *Wm. De Forest & Co.,* in said business, which had never been repaid. The court instructed the jury, that under these circumstances, the plaintiffs had a right to recover, and submitted the facts to them on the respective claims of the parties. The facts were found as claimed by the plaintiffs.

This charge appears to us to be entirely unexceptionable; and, indeed, we do not understand that the principle embraced in it is controverted, by the defendants. The note

*New-Haven,*
July, 1848.

Dulles
*v.*
DeForest.

was payable to *Dulles & Fisher,* or their order, and was delivered to them, expressly for the purpose of being held by them, or negotiated to other persons, as a security to whichever of them should make the contemplated advance to *Wm. De Forest & Co.* ; and such advance having been made by the plaintiffs, the note was thereupon properly indorsed to them, by *Dulles & Fisher,* for the very purpose for which it was originally executed. That a promissory note or other instrument, executed to a person, for the purpose of securing a particular loan or advancement, to be made by him or another person by his procurement, is available by either of them making such loan or advancement, cannot admit of doubt. It is equally clear, that if such note is negotiable, an action on it is sustainable against the maker, by the person from whom the payee has procured such loan or advancement, and to whom he has indorsed it ; or by the payee, for the benefit of such person, if it has not been indorsed. The authorities on this point are decisive. *Pease* & al. v. *Hirst* & al. 10 *B. & C.* 122. (21 *E. C. L.* 38.)

The defendants, on the trial, requested the court to instruct the jury as to the effect of the renewal, by *Dulles & Fisher,* of their two first acceptances of the drafts drawn on them, by the firm of *Wm. De Forest & Co.* ; and of the subsequent acceptances, by the plaintiffs, of the drafts drawn on them, by the same firm ; and of the transfer, by *Dulles & Fisher,* of the balance of their account against *Wm. De Forest & Co.* (which included the acceptances by the former, for the latter,) to the plaintiffs, with the assent of *Wm. De Forest & Co.* The omission of the court to notice these points specifically in the charge, constitutes no ground for a new trial, because they were unimportant, excepting on the supposition that an advance or loan had been made, by *Dulles & Fisher,* to *Wm. De Forest & Co.,* as claimed by the defendants ; and the jury found, that no such advance or loan was made. It appears, therefore, that the state of facts did not exist, upon which those questions could arise. Hence, it becomes unnecessary for us to examine them. It is a sufficient reason for not disturbing the verdict, on this ground, that it conclusively shows that the defendants have sustained no injury, in consequence of these points not being particularly presented to the jury.

The remaining enquiry involves the correctness of that part of the charge below, which respected the application of the moneys arising from the sales of the goods of *Wm. De Forest & Co.*, in the hands of the plaintiffs. And the question here is, as to the effect of the plaintiffs having blended in one general account upon their books the amount loaned by them to *Wm. De Forest & Co.*, for which the note in question was given as a security, with the avails of the goods of the latter sold and cash received on their account, by the plaintiffs, after the payment by them of the acceptances by them, which constituted that loan, in connexion with the fact that such account was, from time to time, rendered by the plaintiffs, to *Wm. De Forest & Co.* In point of fact, however, it appears, that the amount of those acceptances was not debited, by the plaintiffs, in their account, to *Wm. De Forest & Co.*, after they were paid by the plaintiffs; but that the acceptances themselves were charged at the time when they were given. It is obvious that the entry, in the account of the acceptances and their amounts, when such acceptances took place, and consequently before any payment had been made by the plaintiffs, by reason of their liability thereon, amounted only to a mere *memorandum* of the transaction, and constituted, of itself, no charge or evidence of indebtedness, by *Wm. De Forest & Co.*, to the plaintiffs; since the latter, until they had paid those acceptances, could have no claim or right of action against the former. But, in accordance with the course of the argument before us, we put the case, so far as the present question is concerned, on the ground that the effect of thus charging these acceptances, is substantially the same as if the moneys paid on them, by the plaintiffs, had been actually charged thereafter. Still the circumstance, that the charge was made in the manner that has been mentioned, is one which might properly be considered by the jury, in coming to their result, as to the intention with which such entry or charge was made, provided the court below was correct in submitting to them the question of such intention.

It has not been, nor do we think that it successfully could be, claimed, that, if the moneys advanced on the acceptances, and the avails of the goods sold and cash received, by the plaintiffs, had been entered in distinct accounts, instead of being blended together in one, the law would, in the absence

of any particular evidence to show how those avails and that cash were intended to be applied, appropriate them in payment of the moneys so advanced. The two accounts were entirely different in their nature; one growing out of a special contract respecting a single, isolated transaction,— a loan of a particular sum of money,—and in no wise connected with the other; in which the object of the persons obtaining such loan, was, to carry on, by means of it, the *India-rubber* business, a branch different from, unconnected with, and wholly independent of that (the satinet business,) which gave rise to the other account, and to which it related; and where therefore, it would be highly improbable to suppose, that it was expected, that they would reimburse that loan from the avails of the latter business; since the very necessity of resorting to a loan, in order to enable them to pursue the former branch of business, would indicate that they had not funds to spare for that purpose from the other. For one of those debts the plaintiffs also had specific collateral security, the note in question, signed by a surety, and for the other only the personal responsibility of *Wm. De Forest & Co.* The nature of the connexion existing between the plaintiffs and *Wm. De Forest & Co.* in respect to the satinet business, (and they were not connected in the other,) would, furthermore, seem to require, that the account of the moneys received by the plaintiffs, in the course of their agency, should not be disconnected from that business. And the further fact, that the plaintiffs credited said moneys so received to *Wm. De Forest & Co.*, in the satinet account, would be strong evidence of an election, by the plaintiffs, to appropriate them to the indebtedness growing out of that particular business, by which they would, unless under some peculiar circumstances, not existing here, be precluded from appropriating them in any other manner. Under these circumstances, it would be contrary to the presumed intention of the parties, and therefore, opposed to the principles of justice and equity, by which the law, in the absence of any specific application by the parties, will always be governed, to apply the moneys received by the plaintiffs for the goods, to the payment of the loan, for the security of which the note in question was given.

We are brought then to consider the effect of blending

*New-Haven, July, 1848.*

*Dulles v. DeForest.*

*New-Haven,*
*July, 1848.*

Dulles
*v.*
DeForest.

these matters together in one account. The defendants rely on the general principle, that where there is a general account, or separate accounts are treated as an entire account, by the parties, payments made generally, that is, without any specific appropriation of them, are considered as having been made in discharge of the earlier items; and they insist, that the jury should have been instructed to adopt that rule, in the present case. The court instructed them, that the presumption of law in such a case, is, that the payments were intended to be applied to the oldest items of the whole account; but further informed them, that they had a right to find or imply, from all the circumstances of the case, what application was intended by the parties, and should render their verdict on this point accordingly. This, we think, was correct. It was certainly so, unless the rule relied on by the defendants, is invariable. This, however, is not the case. The rule, although general, is, by no means, universal. It is not an artificial or arbitrary principle, but one founded merely on the presumed intention of the parties; and is applicable only where there is no evidence sufficient to show a different intention. But where there is such evidence, the presumption fails. And such evidence may consist of any facts or circumstances from which the intention of the parties may properly be inferred. It is obvious, that all the transactions between individuals may be, and often are, entered together in the form of one general account, for the purpose of more readily showing the state of all the affairs between them, or for some other purpose of mere personal convenience; and it would be unreasonable, indeed, if an inflexible rule of inference should be adopted, which would preclude them from showing, in such a case, what was their real object and intention. The plaintiffs, therefore, notwithstanding they kept and rendered to *Wm. De Forest & Co.* an account, in a general form, embracing their acceptances for that firm; and although the latter received that account, without expressing any objection to it; are not estopped, as the defendants claim, from showing their real object in keeping or rendering their account in that manner. These circumstances constituted evidence, but not conclusive evidence, in favour of the claim of the defendants. And the fact that *Lewis* was only a surety in the note in question, does not, in

our opinion, furnish any reason for varying the principles which should be adopted, in this respect, if it was a transaction only between the plaintiffs and *Wm De Forest & Co.*

*New-Haven, July, 1848.*

*Dulles v. De Forest.*

The views expressed by us, on this point, are fully sustained, by the cases. In addition to those cited by the plaintiffs, we would refer to *Pease* & al. v. *Hirst* & al. 10 *B. & C.* 122. (21 *E. C. L.* 38.) and *Lysaught* v. *Walker*, 5 *Bligh*, *N. S.* 1.; the first of which is directly in point. We think, therefore, that this part of the charge, was also unexceptionable.

The result is, that a new trial should not be advised.

In this opinion the other Judges concurred, except ELLSWORTH, J., who was absent.

New trial not to be granted.