(67 App. Div. 235.)

PERRY v. BOOTH et al.

(Supreme Court, Appellate Division, Second Department. December 5, 1901.)

BANKRUPTCY—PREFERENCE—PLEDGE—ADVANCES.

    In May, 1896, and thereafter, the bankrupt contracted to deliver to defendants certain lumber, to be paid for on delivery. Defendants advanced money to him from time to time to enable him to fill such contracts. In November, 1898, he owed defendants nearly $7,000, and in consideration of further advances pledged all his lumber to them. During that month he delivered lumber amounting to nearly the sum of his previous indebtedness, and four advances were made to him in November and on December 8th, aggregating $7,000, and on each occasion he pledged all the lumber he then had as security therefor. On December 13th he asked for a further advance, when defendants purchased all his lumber of the kind covered by their contracts, then on canal boats to arrive, paying him the excess over what he owed them, and released all other lumber pledged to them. At the time of the first advances in November and pledging of lumber as security therefor, defendants had not reasonable cause to believe the bankrupt to be insolvent, though he was in fact. February 15, 1899, he was adjudged a bankrupt. *Held*, that the price of the lumber delivered under the contracts in November was properly credited to unsecured account for prior advances; hence the debt paid by the sale of December 13th was the secured debt, and the transaction with the release of other lumber pledged was merely an exchange of values, and not an unlawful preference, under Bankr. Act (30 Stat. 526) § 60, providing that a preference given by a bankrupt within four months before the filing of the petition on which he is adjudged a bankrupt shall be voidable when the person receiving it had reasonable cause to believe that it was intended as a preference.

Appeal from special term, Kings county.

Action by John M. Perry, as trustee of Samuel A. Skead, a bankrupt, against Charles Booth and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

R. Burnham Moffat, for appellants.

Everett V. Abbot (William S. Maddox, on the brief), for respondent.

SEWELL, J. The complaint alleges that on the 13th day of December, 1898, Samuel A. Skead made a transfer to the defendants of certain property belonging to him, to wit, 1,400,000 feet of lumber of the kind and quality known as "Para Shippers," of the value of $20,000; that on the 15th day of February, 1899, a petition in bankruptcy was filed, and Skead was adjudged a bankrupt; that at the time of the transfer the defendants were creditors of Skead; that the effect of the transfer was to enable the defendants to obtain a greater percentage of their debt than other creditors of the same class, and that the defendants had reasonable cause to believe that it was intended by the transfer to give such a preference. For the determination of the question involved it will be well to consider the testimony in the chronological order of events. In May 1896, Booth & Co. entered into a contract to purchase from Skead 1,500,000 feet of lumber, to be delivered to them during the coming rubber crop season. In January, 1897, a similar contract for the purchase of 2,000,000 feet of lumber was entered into, to be delivered at such times and in such quantities as Booth & Co. might require between May 1, 1897, and May 1, 1898; payments to be made as each lot of lumber was actually delivered and shipped on Booth & Co.'s steamers. While deliveries were being made under this contract, and on or about February 17, 1898, another agreement was entered into between the parties for the sale of 2,000,000 feet of lumber, and an additional 1,000,000 feet at the option of the defendants, at $14.75 per 1,000 feet. The agreement provided that deliveries should be made by Skead alongside of Booth & Co.'s steamers in Brooklyn, as called for, between June 1, 1898, and September 1, 1899, and that Booth & Co. should pay for each lot of lumber as it was delivered and shipped. Skead had no yard, and the lumber that did not remain in the canal boats in which it was brought to the port was stored with the Brooklyn Wharf & Warehouse Company on their breakwater at Erie Basin. Advances of money were made to him from time to time by the defendants, to enable him to purchase the lumber necessary to fulfill his contract with them, as he had little or no capital. It appears that on November 16, 1898, he was indebted to them in the sum of $6,889.32 for advances, that he applied on that day for an advance to enable him to purchase or pay for six boat loads of lumber, nearly all Para shippers of the description required by the defendants for their rubber trade; that they demanded security, and that he there-

upon pledged all of his lumber on the Erie Basin breakwater to se-
cure $2,500, then loaned to him, although he was then entitled to be
credited, and was credited on that day, with the sum of $3,319.21 for
lumber delivered. Two days later Skead pledged the breakwater
lumber to secure another advance of $2,500. November 23, 1898,
he was credited with $4,134.83, and on the 29th of the same month
he again pledged the lumber to secure a loan of $500. On December
8th he pledged the same lumber and the lumber in the canal boats E.
W. Parsons and H. D. Stears to secure an advance of $1,500. These
advances were charged to Skead in the "account current" with the
other loans or advances and all the payments made by the defendants
for lumber delivered. December 9, 1898, an account was stated
between the parties, when it was found and determined that $6,917.77
was due and owing from Skead to the defendants. December 13,
1898, Skead requested another loan. He testifies "that the first re-
quest for an advance that was refused was made around December
13, 1898. There was not a positive refusal. The matter was put to
me in this way by Mr. Christie [defendants' representative]: In
order that they should advance me further funds, I should protect
them further by giving them security. * * * They wanted to
protect their interests in the matter,—they wanted to be protected;
they wanted further security, and they wanted it in a different shape."
It seems that the parties thereupon entered into an agreement, the
purport and effect of which was to pay Skead's indebtedness to the
defendants, and to release the lumber on the breakwater from all
liens for advances to that time. It was agreed that the defendants
should take immediate title and possession of all the Para shippers
in the six canal boats, amounting in the aggregate to 691,318 feet,
and that the purchase price should be paid by crediting Skead with
the amount "on the account current kept by the parties of the second
part as of the date of the opening of navigation on Erie Canal in
the spring of 1899, or sooner, if said lumber shall be shipped by the
parties of the second part on board vessels for Brazil ports, according
to the quantity and as of the dates of said shipments." It was also
agreed that interest should be charged on all items of the current
account from the respective dates thereof. On the following day
defendants paid or advanced $2,337.79, and Skead executed an in-
strument wherein he pledged to them all the lumber on the break-
water, being 569,468 feet, "as security for any advances made or to
be made by the party of the second part to the party of the first
upon account current or otherwise, subsequent to the 9th day of De-
cember, 1898." On the 28th day of December they advanced the
further sum of $1,660.57. The court found that "the transfer of
November 16, 1898, of lumber on the breakwater, which was of the
value of $6,430.53, was made in good faith, and as security for future
advances by defendants"; and also found that "they thereafter ad-
vanced at divers times sums of money aggregating more than the
value of such lumber, as stated above, and that such transfer is free
from criticism." The court also found that Skead, on November
16, 1898, "was, and for a long time prior thereto had been, in-

solvent"; that, excepting the transfer of November 16th of the lumber on the breakwater, they had reasonable cause to believe that the other transfers complained of were made with the intention of creating for them a preference, whereby they obtained a greater percentage of their antecedent debt than the other creditors in their class; that the defendants had no interest in or title to the proceeds of any part of the lumber transferred to them December 13th and 14th; and that the plaintiff was entitled to judgment against the defendants for the sum of $6,542.10, the proceeds in value of the lumber so transferred which they had received, with interest thereon.

The appellants contend that the indebtedness agreed upon between Skead and the defendants was a secured indebtedness, which was paid by the delivery of the lumber in the canal boats on the 13th of December, 1898. If they are right in this contention, the transaction on December 13th was a mere exchange of values; there was no preference, and the judgment must be reversed. The attorney for each party concedes in his brief that the single question involved upon this appeal is whether the amount found due December 9th was a secured indebtedness. The determination of this question depends upon whether the secured or unsecured advances were paid by the lumber delivered to the defendants on the 16th and 23d of November, for there is really no contest in respect to the fact that no other lumber was delivered or payment made by Skead to the defendants from the 16th of November, when the advances were secured, until the 13th of December, when the defendants claim they were paid. It is impossible to believe that Skead would have pledged the breakwater lumber on the 16th of November to secure the $2,500 then advanced, if the amount credited to him on that day for lumber delivered was applied to its payment. It is equally apparent that Skead would not have secured the payment of the $500 advanced on the 29th of November, or the $1,500 advanced on the 7th and 8th of December, if it had been agreed or understood that the amounts before credited for lumber delivered should be applied to the payment of these advances. No reason is given or suggested why Skead should give or the defendants should take security for debts that had already been paid. There is no evidence to support such a conclusion. On the contrary, we are entitled to assume, from all the evidence in the case, that it was the undoubted intention of the defendants and that it was undoubtedly the intention of Skead to apply the amounts credited on the 16th and 23d of November to the payment of the earlier and unsecured advances. It may also be observed that it is a general rule that, where a payment is made upon general account, with no direction as to its application, the law applies it to the oldest items. National Park Bank of New York v. Seaboard Bank, 114 N. Y. 28, 35, 20 N. E. 632, 11 Am. St. Rep. 612; Sheppard v. Steele, 43 N. Y. 52, 60, 3 Am. Rep. 660. I think that the indebtedness stated between the parties on the 9th of December, 1898, was the balance of the $7,000 secured by the lumber on the breakwater and in the two canal boats, and that this balance remained so secured until paid by the sale or delivery of the Para shippers on the 13th of December.

It necessarily follows from this conclusion that the transfer complained of did not reduce the fund applicable to the payment of the bankrupt's creditors, that it was a mere exchange of values, and that the defendants did not secure a voidable preference within the provisions of section 60 of the bankrupt act (30 U. S. Stat. 562). In order to render a preference voidable within the provisions of this section, it is necessary to establish not only that one creditor obtained a greater percentage of his debt than any other creditor of the same class, but the giving of a preference within four months before the filing of a petition in bankruptcy, and a reasonable cause on the part of the creditor to believe that a preference was intended. Sebring v. Wellington, 63 App. Div. 498, 71 N. Y. Supp. 788. I am unable to gather from the facts anything to justify the conclusion that the defendants had reasonable cause to believe that a preference was intended by the transfers in question. It is undisputed that Skead purchased the lumber in question for the purpose of delivering it to the defendants when called for; that they furnished or advanced the money to pay for it; that Skead delivered the lumber pursuant to the contract; and that the defendants paid the agreed price by releasing a lien of $6,430.53 on the breakwater lumber, by paying $2,000 on that day and $2,337.79 on the day following, when the lumber on the breakwater was pledged to secure the overplus and other advances. It seems to me that the necessary conclusion from these facts is that no preference was in fact created by either of these transactions. If, however, they are capable of two inferences, one in favor of the integrity and the other to the contrary, the inference in favor of the position that no fraud upon the law was attempted must be the one that should prevail. This is certainly the rule in regard to fraud in fact (Morris v. Talcott, 96 N. Y. 100), and I can see no reason why it should not prevail in respect to fraud upon the law (Johnson v. Rapalyea, 1 App. Div. 463, 37 N. Y. Supp. 540).

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.