THE AMERICAN WOOLEN COMPANY *vs.* ISRAEL H. MAAGET.

Third Judicial District, New Haven, June Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The allowance of a creditor's claim in bankruptcy proceedings does not merge or extinguish the cause of action upon which such claim is based, so as to prevent the creditor from prosecuting a suit, which was pending at the date of the debtor's adjudication as a bankrupt, for the recovery of the same claim or a portion thereof; and although the debtor's discharge in bankruptcy, if he obtains one, may be pleaded in bar of the further prosecution of such action, it will not preclude the rendition of a special or restricted judgment if that be necessary to secure to the creditor the benefit of an attachment, or to establish, as in the present case, the liability of a surety on a bond substituted for the property attached.

The denial of a discharge in bankruptcy remits the creditor to all rights and remedies which may have been suspended by the pendency of the bankruptcy proceedings.

The presentation of a claim against a bankrupt must be made without condition or reservation in order to constitute a waiver of the creditor's right to thereafter pursue the cause of action underlying such claim; and therefore a presentation made without prejudice to

the claimant's right to proceed in a then-pending action, creates no waiver on his part.

The law of the State in which merchandise is sold and in which payments on account thereof are received and credited, must govern upon the question of the application of payments.

The law of another State will be presumed to be like the law of our own, in the absence of any showing to the contrary, or like the common law, if our own law is not settled.

If a debtor, when making a payment, fails to direct to which one of two or more debts or items of an account the sum is to be applied, the creditor may make the application.

The time within which this election or application by the creditor must be made varies in the different States. Some courts allow it to be made at any time prior to verdict or judgment; some require it to be made within a "reasonable time"; some before suit is brought; and still others, and among them the courts of this State, require it to be made before the controversy has arisen upon which suit is brought.

The law of New York, it seems, requires the creditor to make the application within a reasonable time; and hence the failure of the plaintiff in the present case to make any application of the payments prior to suit, deprived it of its right to make such application thereafter, whether its failure were to be judged by the law of New York or by the law of this State.

In the absence of any application by either debtor or creditor—which was the situation here—the court will apply the payments according to the justice of the case. This will best be promoted in each instance by carrying out the intention of the parties, if it can be discovered. If not, and if there be no other controlling circumstance, the law will presume that the entry of payments made before suit, as credits upon an open, running, mercantile account, indicates the intention of the creditor to apply the payments to the earliest items of the account, and the court will make the application accordingly.

This rule, although general, is by no means universal. It is not an arbitrary or artificial principle, but one founded merely on the presumed intention of the parties, and yields to any evidence sufficient to show a contrary intent.

Payments made since the commencement of the action ought not, however, to be credited on the items of the account in suit, since this might unfairly prejudice the rights of the plaintiff, already secured by attachment, and moreover would require the presumption of an intent to credit which manifestly did not exist in point of fact.

In its memorandum of decision the trial court stated that the plaintiff "never intended to apply the payments" in question to the earlier items of the account, which were the items in suit. *Held* that inasmuch as this statement was in conflict with the carefully pre-

pared finding of facts—in which it certainly should have appeared in view of its commanding importance,—it must be treated as an expression of a legal conclusion rather than as a finding of fact.

Argued June 13th—decided December 19th, 1912.

ASSUMPSIT on a manufacturer's account, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error in part.*

The plaintiff, a manufacturer of woolen cloths, had for several years prior to this action sold goods to the defendant, a manufacturer of clothing.

The plaintiff kept an open account of said sales on its books, and entered the same when made but not in the order of delivery. The said account comprised, under different columns: the date of each sale, the identifying number of the goods, the terms of the sale, the dating of the bill in case a date other than the sale was given, the amount of the charge, and the amount of any credit for goods returned and payments made.

The plaintiff, at the time of this action, had sold goods to the defendant as follows:—

Group 1.  June 8th to August 16th, 1907, items dated day of sale and due October 8th to December 16th, 1907,          $11,566.39

Group 2.  May 17th to November 23d, 1907, items dated day of sale and due April 1st, 1908,          18,901.82

Group 3.  December 18th, 1907, to February 28th, 1908, items dated day of sale and due April 18th to June 28th, 1908,          5,366.03

Making a total due, exclusive of payments, at date of suit,          $35,834.24

| | |
|---|---|
| Group 4. February 4th to May 27th, 1908, items dated June 1st, 1908, and due October 1st, 1908, | $2,710.15 |
| Group 5. June 1st to 20th, 1908, items dated day of sale and due October 1st, 1908, | 88.03 |
| Total sales, | $38,632.42 |

Payments had been made on said account as follows, before this action:—

| | | |
|---|---|---|
| March 10th, 1908, | $  873.53 | |
| April   11th, 1908, | 1,351.88 | |
| May   ˙ 6th, 1908, | 1,192.14 | |
| June   4th, 1908, | 1,564.78 | |
| June   5th, 1908, | 1,431.00 | 6,413.33 |

After this action:—

| | | |
|---|---|---|
| September 4th, 1908, | 1,587.91 | |
| March      9th, 1909, | 1,731.83 | 3,319.74 |

Said payments of $6,413.33 were credited by the plaintiff generally on its said ledger account with the defendant, but had not, prior to the bringing of this action, been applied, either by the plaintiff or the defendant, to any particular items of said account, and the defendant had made no request for any such application. In the course of dealing with the plaintiff, sometimes the defendant designated the particular items of the account to which he desired the payments applied, in which case they were so applied on said ledger account, and at other times the defendant made no application of the payments, and in such cases the payments were entered as a general credit on said account.

This action was begun by attachment on August 31st, 1908, to recover for the items in group one.

Shortly thereafter the attachment was dissolved by the giving of a bond with surety.

On November 7th, 1908, after said bond had been substituted for said attachment, the defendant was duly adjudged a bankrupt in the United States District Court.

When the defendant was so adjudged, the balance due the plaintiff on the debit side of said ledger account was $31,591.04, which was transferred on the books of the plaintiff to an account called the "suspense account."

On October 9th, 1909, the plaintiff duly filed its proof of claim with the referee in bankruptcy in the sum of $29,890.40, in which proof of claim the fact that this action had been instituted was referred to and the claim presented without prejudice to the plaintiff's right to proceed in said action.

Said claim included all of the items due the plaintiff at the date of suit and subsequent thereto, and was proved and allowed in the sum of $23,187.03.

After this action was begun and before the same came to trial, the defendant applied for his discharge under the Bankrupt Act, and said discharge was denied, and the time limited for an appeal from the order denying said discharge had expired.

A preliminary dividend of five per cent was duly declared on all claims proved and allowed by the bankruptcy court against the estate of said defendant, but said dividend has not yet been paid by the trustee in bankruptcy.

Before issue was joined in this action the defendant moved for a stay of proceedings until twelve months after the date of adjudication in bankruptcy, or until the question of defendant's discharge in bankruptcy was determined. The plaintiff made answer. to said motion that it desired to prosecute said action to

judgment for the purpose of proceeding against the surety in case the condition of the attachment bond was not performed. The court denied the motion for said stay, upon the ground that the plaintiff was entitled to a modified judgment to enforce whatever rights it might be entitled to upon the bond. And still later the plaintiff, in its reply, stated that it " desires to prosecute this action to judgment for the purpose of proceeding against the said surety, in case the condition of the aforesaid bond is not performed."

The court found the issues for the plaintiff, both upon the complaint and counterclaim, and rendered judgment that the plaintiff recover of the defendant $14,436.78.

*William A. Redden* and *William B. Boardman*, for the appellant (defendant).

*John K. Beach* and *Frederick H. Wiggin*, for the appellee (plaintiff).

WHEELER, J. The appeal raises three questions the decision of which are necessary to the determination of this cause:—

1. Did the proof and allowance in the bankruptcy court of the plaintiff's entire claim merge the cause of action involved in the claim sued on?

2. Ought the payments made prior to this action to have been credited upon the items of the account in suit?

3. Ought the payments made subsequent to this action to have been credited upon the items of the account in suit?

We will take up, in order, these questions.

1. The plaintiff brought its action against the defendant upon the items of group one before he was adjudged a bankrupt. In order to share in the bank-

rupt's estate the plaintiff was compelled to prove its entire claim against the bankrupt. If the bankrupt procured his discharge the plaintiff's right of action thereafter upon its claim, in the absence of fraud, would be gone, since it had due notice of the proceeding. If the bankrupt failed to secure his discharge,—and that is this case—the plaintiff's cause of action survived, and dividends declared in the bankruptcy court and received by the plaintiff merely reduced *pro tanto* the amount of its recovery.

It has been held that "a creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences." *Wiswall* v. *Campbell*, 93 U. S. 347, 351. And that a disallowance of a claim is a bar to an action upon the subject-matter of the claim. *Hargadine-McKittrick Co.* v. *Hudson*, 122 Fed. Rep. 232, 235; *In re Kenyon*, 156 Fed. Rep. 863, 864. Assuming that this be the ordinary rule of the Federal Court, it has no application to the situation presented in this case for two reasons. First: The cause of action underlying the claim is never held merged in the judgment of allowance, unless the bankrupt secures his discharge. When, as in this case, the bankrupt is denied a discharge, the cause of action survives. This was the construction placed upon the Bankrupt Act of 1867, and decisions upon this point are equally applicable to the present Act. Both Acts permit the creditor proving his claim to object to the discharge. If the allowance of the claim ends the cause of action arising from the existence of the claim, contesting the discharge could not affect the rights of the creditor and such a course would be futile. If the allowance merged the cause of action, and the discharge was denied because of fraud, the creditor could not avail himself of the fraud. The true rule is that the denial of the discharge remits the

American Woolen Co. *v.* Maaget.

creditor to all the rights and remedies which may have been suspended by the proceedings in bankruptcy. *Dingee* v. *Becker*, 7 Fed. Cas. No. 3,919, p. 724 (9 N. B. R. 508); *Smith* v. *Soldiers B. M. & D. Co.*, 35 N. J. L. 60, 62; *Hill* v. *Phillips*, 14 R. I. 93, 94; *Rogers* v. *Wentworth*, 58 N. H. 318.

Second. The presentation of the proof of claim and its allowance did not constitute a waiver of the plaintiff's right to thereafter pursue the cause of action involved in the claim. The federal cases seem to hold that an unreserved presentation of a claim may constitute such waiver, but that the creditor may in his presentation reserve his right to preserve his cause of action. When one Hall, a creditor, filed against the bankrupt estate of his brokers a claim, which included the value of certain stocks he had deposited with the bankrupt, and expressly reserved the right to recover his stocks, the court said: "'We are of the opinion that the reservation of Hall evidenced his intention to hold on to whatever rights he had in his shares of stock, and there is nothing in his conduct which would preclude him, after he had discovered that the shares had been returned to the assignee in bankruptcy, from reclaiming them as his own property.'" *In re Jacob Berry & Co.*, 174 Fed. Rep. 409, 410. Filing a claim without asserting a lien is held a waiver of the creditor's security. *In re Fisk & Robinson*, 185 Fed. Rep. 974, 976; *In re Strickland*, 167 Fed. Rep. 867. So too, it was held that a creditor who had a right to rescind a contract and recover his certificate of deposit, and with full knowledge filed his claim, irrevocably elected to pursue this remedy alone. *In re Kenyon*, 156 Fed. Rep. 863. In the case before us the plaintiff began suit against the defendant before he was adjudged a bankrupt, and when it filed its proof of claim in the bankruptcy court gave notice of the institution of the action and stated

that it filed its claim without prejudice to its right to pursue its action. The plaintiff's reservation disclosed its purpose to preserve its rights in the action already brought.

Third. Had the discharge been granted, it would have afforded no obstacle to the rendition of a special judgment securing the benefit of the attachment made, or of the substituted bond given, prior to the adjudication of bankruptcy. A qualified judgment of this character is within the power of our courts to render. *Schunack* v. *Art Metal Novelty Co.*, 84 Conn. 331, 338, 80 Atl. 290; *In re Loden*, 184 Fed. Rep. 965; *Standard Sewing Machine Co.* v. *Kattell*, 132 N. Y. App. Div. 539.

The plaintiff expressly asserted in its interlocutory motion its purpose to secure such a judgment. The pursuit of such a judgment will not prevent proof of a claim which includes the claim in suit; in the distribution of dividends the amount of the judgment may be deducted from the face of the claim allowed and the dividend paid upon the balance. "Moreover," says the court, "in this case [*In re Buchan's Soap Corporation*, 169 Fed. Rep. 1017, 1018] the action was brought in the State court before the defendant went into bankruptcy, so that, if this doctrine had any application, the State court suit would bar the proceeding to reliquidate in bankruptcy; but the entire doctrine has no application to such cases."

The trial court rightly held that the claim in suit was not merged by the allowance of the entire claim in the bankruptcy court.

2. The defendant contends that the cash payments credited generally upon the plaintiff's account, both those made prior to this action and those made subsequent, should have been applied to the items of the account sued upon, since these are the earliest items of the entire account.

American Woolen Co. *v.* Maaget.

The sales of goods making up the account in suit were made in New York, and the application of payments is governed by the law of New York. We have no proof as to what the law of New York is. It is our duty to follow it so far as we can ascertain it from the decisions. General Statutes, § 698; *Lockwood* v. *Crawford*, 18 Conn. 361, 370, 371. When this cannot be done with certainty, it is our duty to presume it to be like our own, and when our law is not settled to presume it to be the same as the common law. *Adams* v. *Way*, 33 Conn. 419, 432; *Lockwood* v. *Crawford*, 18 Conn. 361, 370.

The ledger account of the plaintiff with the defendant, on the debit side, consisted of continuous charges of various bills of goods sold on different dates, with entries of the several differing dates when the same became due. Upon the credit side, opposite the charge for goods sold, appeared credit entries for goods returned, and cash payments were entered generally as "cash on account." This was not a mutual account, nor was it an account composed of as many distinct causes of action as there were bills of goods sold. It cannot properly be treated as such, for the parties did not consider these as distinct debts, but as one entire account. *Pierce, Clark & Co.* v. *Knight*, 31 Vt. 701. That the different bills of goods which made up the debit side were due at different times did not change the character of the account. This is the every-day incident of the ordinary mercantile account,—of the open, running account—made up of debits on one side and cash credits and goods returned on the other.

But whether this be regarded as an ordinary, running mercantile account, or as an account made up of as many independent causes of action as there are bills of goods sold, the rule of law as to the appropriation of payments does not differ. 30 Cyc. 1233, 1235.

Ordinarily the debtor may direct at the time of

payment to which one of two or more debts or items of an account a payment shall be applied; on his failure to so direct the creditor may make the application. This may appear by express designation, or the intention so to do may be inferred from the circumstances surrounding the payment. *Cavanaugh* v. *Marble,* 80 Conn. 389, 391, 68 Atl. 853; *Chapman* v. *Commonwealth,* 25 Gratt. (Va.) 721, 750, 751. We enforce the same rule in the correlative action of book debt for goods sold with certain credits, the account being an entire one without any rest or balance struck. *Fairchild* v. *Holly,* 10 Conn. 175, 179.

The courts of the different jurisdictions are not in accord upon the time when the creditor may make application of payment. Some courts hold that the creditor may make application at any time prior to judgment or verdict. *Brice* v. *Hamilton,* 12 S. Car. 32, 38; *Pearce* v. *Walker,* 103 Ala. 250, 253, 15 So. 568; *Starrett* v. *Barber,* 20 Me. 457; *Haynes* v. *Waite,* 14 Cal. 446, 449; *Mayor of Alexandria* v. *Patten,* 4 Cranch (U. S.) 317. Courts hold, as a necessary corollary of this rule, that the institution of the suit evidences the creditor's application of payments to items of the account other than those sued on. *Haynes* v. *Waite,* 14 Cal. 446, 449; *Starrett* v. *Barber,* 20 Me. 457. Other courts hold that the creditor must make his application of payments within a reasonable time. *Shipsey* v. *Bowery Nat. Bank,* 59 N. Y. 485, 492; *Harker* v. *Conrad,* 12 Sar. & R. (Pa.) 301, 304; *Allen* v. *Culver,* 3 Denio (N. Y.) 284. Other courts hold that it must be made before suit. *People* v. *Grant,* 139 Mich. 26, 28; *Boynton* v. *Salinger,* 147 Iowa, 537, 547, 126 N. W. 369, 372; *Harker* v. *Conrad,* 12 Sar. & R. (Pa.) 301, 304; *Frazer* v. *Miller,* 7 Wash. St. 521, 527, 35 Pac. 427; *Plummer* v. *Erskine,* 58 Me. 59, 62. While others hold that it must be made before the controversy arises upon which suit is brought.

*United States* v. *Kirkpatrick,* 9 Wheat. (U. S.) 720, 737; *National Bank* v. *Mechanics Nat. Bank,* 94 U. S. 437, 439; *Chapman* v. *Commonwealth,* 25 Gratt. (Va.) 721, 750, 751; *Benson* v. *Reinshagen,* 75 N. J. Eq. 358, 362, 72 Atl. 954, 955; *Terhune* v. *Colton,* 1 Beasley (12 N. J. Eq.) 312, 320; *Applegate* v. *Koons,* 74 Ind. 247, 248; *Lazarus* v. *Friedheim,* 51 Ark. 371, 378, 11 S. W. 518; *Johnson* v. *Thomas,* 77 Ala. 367, 369; *Milliken* v. *Tufts,* 31 Me. 497, 501.

We have not heretofore expressly passed upon the point. If we accord the creditor the right to apply payments, made without designation by the debtor, up to the period of controversy, we give him a reasonable time to exercise his privilege and fully protect his rights. To extend his period of election beyond this point might wrong the debtor and unfairly prejudice the rights of third parties. We think the better reason and authority support the rule that the election of the creditor must be made before the controversy arose.

The rule requiring the election by the creditor prior to suit rests upon identical reasoning and leads to the conclusion that the election in the present case was not made within a reasonable time.

The plaintiff did not make its election prior to this suit. The finding is explicit that "said payments had not prior to the bringing of this action been applied, either by the plaintiff or by the defendant, to any particular items of said account." Hence its right to apply these payments ceased, whether we regard the true rule as that within a "reasonable time," or prior to the controversy, or prior to suit.

If the law of New York be that of the "reasonable time" rule, as we judge it is from *Shipsey* v. *Bowery Nat. Bank,* 59 N. Y. 485, 492, the conclusion must result that the plaintiff has lost its right of application. The right of application was lost before suit, and therefore the

institution of the suit could not evidence, as the plaintiff claims, an intention to apply the payments to the items of the account other than those sued upon.

In the absence of application by debtor or creditor, the court will make it "according to the justice of the case." *Chester* v. *Wheelwright,* 15 Conn. 562, 567; *Stamford Bank* v. *Benedict,* 15 Conn. 437, 442; *Selleck* v. *Sugar Hollow Turnpike Co.,* 13 Conn. 453, 460. New York has adopted the same rule. "The court will make such application of the payments as equity and justice require, according to its own notion of the intrinsic equity and justice of the case." *Camp* v. *Smith,* 136 N. Y. 187, 201, 32 N. E. 640; *Seymour* v. *Van Slyck,* 8 Wend. (N. Y.) 403, 416; *Stone* v. *Seymour,* 15 Wend. (N. Y.) 19, 33. The weight of authority supports this rule. *National Bank* v. *Mechanics Nat. Bank,* 94 U. S. 437, 439; *United States* v. *Wardwell,* 5 Mason (U. S.) 82, 85; *Terhune* v. *Colton,* 1 Beasley (12 N. J. Eq.) 320, 321; *Drake* v. *Sherman,* 179 Ill. 362, 368, 53 N. E. 628; *Lingle* v. *Cook's Admrs.,* 32 Gratt. (Va.) 262, 271.

The justice of each case will best be promoted by carrying out the intention of the parties. In case an expressed intention cannot be found, one may be implied from the circumstances of the case. Every presumption and rule which the courts have adopted in furtherance of their purpose to discover the "justice of each case," are subordinate to this rule of intention. *Tomlinson Carriage Co.* v. *Kinsella,* 31 Conn. 268, 272; *Dulles* v. *DeForest,* 19 Conn. 190, 204; *Barrett* v. *Sipp,* (Ind. App., April, 1912), 98 N. E. 310, 313.

The finding in this case makes no finding of the intention of the parties. It excludes an express declaration of intention. It recites facts which would make a finding of the intent of the parties to apply these payments to items of the account other than those in suit,

difficult if not impossible. The plaintiff credited these payments generally on the account, and nothing on the books of account nor any communication made by it to the defendant showed an application to the later items of the account. It brought suit upon the earlier items. The defendant went into bankruptcy. At no time has the plaintiff indicated its purpose to apply these payments to the later items. After bankruptcy the plaintiff transferred on its books to a "suspense account" the balance due on plaintiff's ledger account. The plaintiff filed its proof of claim in the bankruptcy proceeding showing the entire debits on one side of the account—the items in suit not separated from the rest of the items in any way—and the entire payments on the other side, the balance representing its claim. No distinction is shown between the several items of the account. It might well have been found from these circumstances that the plaintiff had no intention of applying these payments to other than the earlier items. It could not, upon these facts, be held as matter of law that there was such an intention. We have not overlooked the statement in the memorandum of decision, made a part of the finding, that "the plaintiff never intended to apply these payments to these items." We think the trial judge intended this as an expression of a legal conclusion rather than as a finding of fact, in view of the fact that it conflicts with the carefully prepared finding, and that it is indispensable to the rights of the parties that a fact of such controlling consequence should appear in the finding.

In the absence of evidence of a contrary intention and of any other controlling circumstances, the law presumes that the entry of payments generally as credits upon an open, running merchant's account, indicates the intention of the creditor to apply the payments to the earliest items of the account. "The rule, although general,

is, by no means, universal. It is not an artificial or arbitrary principle, but one founded merely on the presumed intention of the parties; and is applicable only where there is no evidence sufficient to show a contrary intention." *Dulles* v. *DeForest*, 19 Conn. 190, 204; *Shellabarger* v. *Binns*, 18 Kan. 345, 352; *United States Rubber Co.* v. *Peterman*, 119 Ill. App. 610, 623. As a general rule the law, when it makes the application, "will apply the payment to the extinguishment of the oldest debt." *Fairchild* v. *Holly*, 10 Conn. 175, 179. "It may also be observed that it is a general rule that where a payment is made upon general account, with no direction as to its application, the law applies it to the oldest items." *Perry* v. *Booth*, 67 N. Y. App. Div. 235, 239, 73 N. Y. Supp. 216; *Hurd* v. *Wing*, 93 N. Y. App. Div. 62, 65, 86 N. Y. Supp. 907; *Kloepfer* v. *Maher*, 84 N. Y. Supp. 138; *Frazer* v. *Miller*, 7 Wash. St. 521, 527, 35 Pac. 427; *Hughes & Co.* v. *Flint*, 61 Wash. St. 460, 462, 112 Pac. 633; *Crompton* v. *Pratt*, 105 Mass. 255, 257; *Peale* v. *Grossman*, 70 W. Va. 1, 4, 73 S. E. 46, 48; *Chapman* v. *Commonwealth*, 25 Gratt. (Va.) 721, 750, 751; *Polk Printing Co.* v. *Smedley*, 155 Mich. 249, 253, 118 N. W. 984; *Grasser & B. B. Co.* v. *Rogers*, 112 Mich. 112, 114, 70 N. W. 445; *Hersey* v. *Bennett*, 28 Minn. 86, 92, 9 N. W. 590; 30 Cyc. 1243; note to 96 Amer. St. Rep. 55.

We are of opinion that under this rule the trial court should have applied the payments made prior to suit, to the earliest items of the account, which were, in part, the items in suit.

3. We are further of opinion that the payments made after suit begun and attachment made, ought not to be credited upon the items of the account sued on, since this would unfairly prejudice the rights of the plaintiff already secured in its suit; and moreover, the law should not enforce a rule which rests upon a presumption of the

appearance of an intent to so credit which manifestly does not, in fact, exist.

There is error in part, the judgment is set aside and the cause remanded with direction to the Superior Court to render judgment in favor of the plaintiff for the amount of $5,153.06 damages, and its costs with interest thereon from December 16th, 1907.

In this opinion the other judges concurred.