New-Haven,
July, 1851.

Foster
v.
Thomas.

------------

### FOSTER against THOMAS and another.

It is the duty of an administrator, in selling estate of the deceased, by order of the court of probate, to sell for ready money ; and if he neglect to do so, and sell on the personal security of the purchaser, it is a breach of duty, for which, if a loss ensues, he is liable on his bond to the court of probate. And in such case, his having acted prudently and in good faith, will not exonerate him from liability.

Where the administrator sold on credit, and took the promissory note of the purchaser ; then resigned his office, and an administrator *de bonis non* being appointed in his place, he delivered to the latter the note thus taken ; it was held, that the first administrator was not thereby exonerated from liability.

It is a general principle of law, that wherever a public officer is entrusted with property to sell, he is liable for its true value, if he parts with the title, without receiving the cash.

THIS was an action of debt on bond, brought by *Eleazer K. Foster,* as judge of the court of probate, against *Leveret Thomas,* administrator of *Hezekiah Thomas,* deceased, as principal, and *Henry A. Smith,* as surety. The defendants pleaded performance of the condition of the bond. The plaintiff replied, setting forth specially certain breaches ; to which there was a rejoinder, by the defendants, detailing the circumstances of the administration. The plaintiff demurred to the rejoinder.

By the pleadings in this case, it appeared, that the defendant *Thomas,* had been appointed administrator on the estate of *Hezekiah Thomas ;* that, being duly qualified, there came

*New-Haven,*
*July, 1851.*

Foster
*v.*
Thomas.

into his possession, certain articles of machinery, belonging to the estate of the deceased, *viz.*, four spinning frames, three cotton cards and one sapper, of great value. The administrator inventoried this property, and returned the inventory to the court of probate, in *June,* 1845. On the 20th of *August* following, he rendered to the court his administration account, in which he charged himself with the aforesaid property, at the inventory price; and this charge stands uncancelled, at this time. In *June* previous, the defendant *Thomas,* the administrator, having first represented the estate insolvent, obtained from the court of probate, an order to sell all the assets, at public or private sale. In *July,* he sold the spinning frames above specified to *Woodworth & Curtis,* (a house, at that time, in good and undoubted credit,) for the sum of 1500 dollars, *viz.,* for 800 dollars cash, and 700 dollars in their note of hand, payable in six months from date. On said 20th of *August,* the day when the defendant rendered his said administration account, and charged himself with said property as on hand, he resigned his administratorship, and *Thomas W. Bradley* was appointed administrator *de bonis non.* The defendant *Thomas* was thereupon ordered to deliver and pay over to the new administrator the goods, chattels and effects belonging to the estate of said *Hezekiah Thomas* remaining in his hands. After deducting what he had paid to extinguish a lien on the property in favour of *Allen & Rising* of *New-Jersey,* he avers, in his rejoinder, that he delivered and paid, in fulfillment of said order, to the new administrator, the balance of the 800 dollars in his hands, and 240 dollars, which he had collected on the note of 700 dollars, together with the note itself, (the remainder being unpaid,) and all other property of the estate which he had in his possession.

It further appeared, that *Woodworth & Curtis* became bankrupt, before the defendant *Thomas* delivered over to the new administrator the note above mentioned, and it proved to be of no value whatever. This, the defendants insisted, was a good defence to any claim on them for a supposed breach of the bond, by said *Thomas,* the administrator. The plaintiff, on the other hand, insisted, that the defendant *Thomas* had no right by law to make sale of the property in question to *Woodworth & Curtis* for any thing but mon-

ey; and that the administrator's selling it on credit, and afterwards delivering over said note to the new administrator, did not save the defendants from the penalty of the bond, and that the defendants still remain liable for the unpaid balance. He insisted, that it would not not be a good accounting in the court of probate, and of course, cannot be any where else.

*New-Haven,*
July, 1851.

Foster
*v.*
Thomas.

The case was reserved for the advice of this court.

*Baldwin* and *Beach*, in support of the demurrer, *i. e.* for the plaintiff, contended, 1. That if an executor or administrator *voluntarily part with* the assets of the estate, upon personal security alone, he is guilty of a breach of trust, and shall be personally answerable, if the security prove defective. First, if he *loans the money* belonging to the estate, upon personal credit, and a loss ensue, it is well settled, that he will be held responsible. *Ryder v. Bickerton*, 3 *Swanst.* 80. *Adye v. Feuilleteau, Id.* 84. and 1 *Cox*, 24. 2 *Madd.* 134. *Wilkes v. Steward, Cooper's Ca.* 6. *Harden v. Parsons*, 1 *Eden's Eq. R.* 148. 50. *note.* 2 *Sto. Eq.* § 1274. *Thompson v. Brown*, 4 *Johns. Ch. R.* 619. *Stukes & al. v. Collins & ux.* 4 *Desaus.* 207. *Orcutt v. Orms*, 3 *Paige*, 459. Secondly, nor will the fact, that he acted in good faith, and for the supposed benefit of the estate, exonerate him from liability for such loss. *Crosse & ux. v. Smith*, 7 *East*, 246. *Clough v. Bond*, 3 *Mylne & Craig*, 491. *Ackerman v. Emmet*, 3 *Barbour*, 267. Thirdly, these principles are applied more stringently in favour of creditors than of legatees or heirs. *Gibbs v. Herring, Prec. Chan.* 49. *Brown's appeal*, 1 *Dal.* 311. *McNair's appeal*, 4 *Rawle* 148. Fourthly, the same reasons exist, and to the same extent, for subjecting the administrator, if he parts with any of the assets of the estate, upon personal credit. *King v. King*, 3 *Johns. Ch. R.* 552. *Palmer & al. appellants*, 1 *Douglass, (Michigan,)* 422. 9 *Petersd. Abr.* 362. *Norden v. Levit, Freem. R.* 422. *S. C.* 2 *Lev.* 189.

2. That there is nothing to be derived from our statutes varying these principles; on the contrary, they confirm them. First, the administrator is to sell " in such manner" (*i. e.*, at public auction or private sale,) as the court may deem best, not on such terms, &c. *Stat.* 361. § 59. Sec-

*New-Haven*,
July, 1851.
———————
Foster
*v.*
Thomas.

ondly, the administrator is charged with the estate at appraisement, and the oath of the appraisers requires that this shall be only " its *present true value* in money." *Stat.* 525.

3. That the record discloses facts, showing that the administrator has acted in *bad faith* towards the estate, and been guilty of a willful breach of trust.

*C. A. Ingersoll* and *Peck*, for the defendants, remarked *in limine*, That the general rule adopted with respect to the liability of executors and administrators for a *devastavit*, is founded on two principles : 1st, that in order not to deter persons from accepting these offices, the court is extremely liberal in making every possible allowance, and cautious not to hold executors and administrators liable upon slight grounds ; 2nd, that care must be taken to guard against an abuse of this trust.   2 *Williams* on *Exrs.* 1530.   2 *Spence's Eq. Jur.* 932.   They then contended,

1. That an administrator, or other trustee, is not liable for any loss which may happen to the estate, unless such loss has been occasioned by his own wrong, his own negligence, or his own willful default.   2 *White & Tudor's Eq. Cases*, 640. 642.   *Taylor* & al. v. *Benham*, 5 *Howard* (*U. S.*) 275. *Osgood* & al. v. *Franklin & al.* 2 *Johns. Ch. R.* 1. 27.   S. C. in err. 14 *Johns. R.* 527.   *Thompson* & al. v. *Brown* & al. 4 *Johns. Ch. R.* 619.   *Pybus* v. *Smith.* 1 *Ves. jr.* 193. *Palmer* v. *Jones,* 1 *Vern.* 144.   *Caffrey* v. *Darby,* 6 *Ves. jr.* 497. a case of *laches.*   *Paine* v. *Fox,* 16 *Mass. R.* 129. 1 *Sw. Dig.* 451. 2 *Sto. Eq.* § 1271. 1272. 6 *Watts,* 188. 253. 8 *Watts,* 21.   9 *Watts & Serg.* 107. 2 *Grattan,* 116.   1 *Madd.* 290.

2. That by selling, as the administrator did sell, he was not guilty of any wrong, negligence or willful default.   The cases cited by the plaintiff, are the cases of loaning on interest of money, for the purpose of increase.   In such a case, the rule in *England* is, that the loan on interest must be on mortgage security, or on the security of public stocks. These cases are not applicable to the sale of property by an administrator.

3. That the sale by an administrator of property entrusted to him, by the court which appointed him, and when he is ordered to sell, to a purchaser on time, on the personal se-

curity of the purchaser, is not such a wrong, such negligence, such willful default, as will make him liable for the price of the property sold, in case of the insolvency of the purchaser before the day of payment, if, at the time of the sale, the purchaser was in good credit, and the administrator acted prudently, and in good faith, in making the sale and in trusting to the purchaser's personal security. *Thompson* & al. v. *Brown* & al. 4 *Johns. Ch. R.* 619. *Smith* v. *Smith* & al. *Id.* 281. 445. *Brown* v. *Campbell, Hopk.* 233. *Mead* & ux. v. *Byington,* 10 *Verm. R.* 116. 122. 6 *Watts,* 188. 253. 8 *Watts,* 21. 9 *Watts & Serg.* 107. *Paine* v. *Fox,* 16 *Mass. R.* 129. 133. The administrator was obliged to sell : he had, in that respect, no discretion; and the same principle should be applied to him as to a trustee or executor, who, from the exigency of the testator's affairs, is obliged to deposit money with a banker. In such a case, the trustee is not liable, if, at the time he deposits the money, the banker is in good credit, even though a loss is sustained, by the failure of the banker. *Knight* v. Lord *Plymouth,* 3 *Atk.* 480. 2 *Sto. Eq.* § 1269. *Jones* v. *Lewis,* 2 *Ves.* 240. 2 *White & Tudor's Eq. Cases,* 642. 643.

4. That the statute law authorizes the administrator to sell on credit. Under the direction or order of the court of probate, he sells in such manner as will be most for the benefit of the estate. The statute leaves him to exercise his discretion. It may be at public auction, or at private sale ; for cash, or on credit. *Stat.* 353. § 38, 9. *p.* 356. § 42. *p.* 361. § 59.

5. That it is the usual practice and common law of *Connecticut* for an administrator to sell on credit. No estate of a merchant or manufacturer could be settled, without great loss, unless the administrator was authorized to sell on credit.

ELLSWORTH, J. The particular question which has been chiefly argued at the bar, *the right of an executor or administrator to sell on credit,* is one of very considerable importance, and of frequent recurrence in the settlement of estates. This question we design to settle, by the present decision, if indeed there has been, at any time, a different impression in courts of probate, or among other officers of the law. What

then is the duty and the power of an executor or adminis-
trator in settling an insolvent estate? *Comyn* says, "The
office of an executor or administrator consists, principally,
in the probate of the will; *in the payment of debts ;* and the
payment of, or assent to, legacies :" and on the subject of
debts, *Blackstone* says, "whatever assets come to his hands,
he may convert into *ready money,* to answer the demand
that may be made against him ; for the executor or admin-
istrator must *pay* the *debts* of the deceased." By our stat-
ute, it is made his duty to administer upon the estate "accor-
ding to law." What then is it to administer according to
law? We answer, *to pay the debts due from the estate* ; and
this he may and must do, by converting the assets into mon-
ey, the only means known to the law for performing the
duty. It must be done *directly,* by a sale for cash, and
not indirectly, for something else, in exchange, by way of
barter or speculation.

To do it directly, is *all* that is *necessary,* and all that is
ordered ; and it is the very thing that *is* ordered. To barter
or exchange one chattel for another, or to sell for promises of
future payment, is not to sell for money ; and to part with
the estate, upon mere personal security, however ample and
satisfactory, is but a circuitous and contingent mode of raising
money, open, as we think, to many and serious objections;
for the estate must be settled without delay. The duty
enjoined is, to sell *absolutely* and *unqualifiedly* ; and this is
the true measure and limit of the power delegated, whether
to this or any other officer of the law, who is ordered spe-
cifically to raise *money,* by the sale of property. Let the
order be followed implicitly, and the law is exactly satisfied;
any deviation from this rule is substituting the *discretion* of
the officer, for the *precepts* of the law. If the executor or
administrator may go beyond this rule, and sell for anything
but ready money, what is the limit of his discretion ? How
many changes and exchanges may he make ; and how much
traffic pursue, without departing from the line marked out
by the law? Can a sheriff, who is directed to raise money on
execution, barter and trade with the property he has levied
on, or make sale of it for anything but cash in hand ? Has
he power, or has any agent of the law power, when he is
peremptorily ordered to raise money, by the *sale* of property,

to raise money by trafficking with it, or by pledging it, and waiting for a more convenient time to sell? Or to part with the title on promises, written or unwritten? In the case of authority derived from a power of attorney, written or verbal, or in case of any substitution of one person for another, by a voluntary act, there is, not unfrequently, considerable latitude allowed, in the exercise of a wise and just discretion; because, in such cases, we seek to learn the intention of the principal, by a fair and proper construction of the authority he has given. If the instrument given is clear and explicit in its terms, that must govern the agent; but if it is not clear and explicit, the instrument may be construed to authorize the use of customary means to accomplish the object specified. As, if a factor or broker be authorized to make sale of goods, and nothing is said in the instrument about giving credit to the purchaser, the customary credit is justly supposed to be intended and expected, by all parties concerned; but when the *law* specifically directs property to be sold, it means nothing more than it says: it goes no further than the language used, and a sale for cash alone satisfies that language. This then is the measure and limit of the authority given.

*New-Haven,*
July, 1851.

Foster
*v.*
Thomas,

The court feel no disposition to relax the rule, wherever it properly applies, or to change it for one less uniform and certain. If more latitude is required, in order to avoid sacrifices in the sale of property, by executors or other officers of the law, who are ordered to sell, let an appeal be made to the persons interested, for an enlarged authority. We lay it down, as a general principle of law, that wherever a *public* officer is entrusted with property to sell, he is liable for its true value, if he parts with the title, without receiving the cash. If, for any reason, he cannot sell for cash, he will not be held responsible, there being on his part no fault. Let any other rule be adopted, and few cases will occur where the person accused of a breach of trust, will not be able to prove a usage or a discretionary power broad enough to screen him from all liability.

By this decision, we do not mean to declare, that executors and administrators are to be held responsible, under all circumstances, and of course, for the assets belonging to the estate they represent; but, in all cases, they are requir

ed to use due diligence in collecting and keeping the property ; and they must not part with it, during administration, without first receiving the money.

This is the rule, we believe, in relation to executors and administrators, and other officers of the law, if not to general trustees having no discretionary power, which prevails in *England* and *New-York*, and most of these states. So are the cases in the books. In *Pennsylvania*, the rule is different. In *South-Carolina*, an executor is authorized to sell on credit, by the *special license* of the judge of probate. Whether the judge of probate in our state could, under the statute law, give such license to an executor, if he chose to do it, we have no occasion now to enquire, or to decide : he did not give it in this case, and this is decisive.

The liability of trustees and of public and private agents in *England*, in the instances of converting assets into money, or the safe-keeping or investing of funds, is believed to be more rigorous and stringent than in our own courts. There, unless the specific line of duty is definitely marked out, landed security, or security in public stock, is required, in their court of chancery. *Ryder* v. *Bickerton,* 3 *Swanst.* 80. *Adye* v. *Feuilleteau,* 1 *Cox,* 24. *Holmes* v. *Dring,* 2 *Cox,* 1. 2. *Walker* v. *Steward, Coop. Eq. R.* 6. *Hardin* v. *Parsons,* 1 *Eden's Eq. R.* 148. 2 *Sto. Eq.* § 1274. *Thompson* v. *Brown,* 4 *Johns. Ch. R.* 620. *Crosse* & ux. v. *Smith,* 7 *East.* 246. *Clough* v. *Bond,* 2 *Myl. & Cra.* 491. *Ackerman* v. *Emmet,* 4 *Barb.* 629. *Gibbs* v. *Herring, Prec. Chan.* 49. *Brown's* appeal, 1 *Dal.* 311. *McNair's* estate, 4 *Rawle,* 148. *King* v. *King* & al. 3 *Johns. Ch. R.* 552. 9 *Petersd. Abr.* 362. *Norden* v. *Levit,* 2 *Lev.* 189.

The second question made in the case, is, does the old administrator's delivering over to the new administrator the note which he took on the sale to *Woodworth & Curtis,* constitute a good accounting or a fulfillment of this bond. On this point, we need add nothing to what we have already said. If the administrator could not make sale of the machinery to *Woodworth & Curtis,* for anything but money, he must, of course, remain chargeable for the property, at the inventory price, to the new administrator. That account is yet open and unsettled ; and it ought regularly to be settled in the court of probate. We think, the defendant *Thomas,*

has made the property his own, by selling it on credit; he has sold and parted with it, without any legal equivalent; and has therefore been guilty of a *devastavit*, according to the authorities every where. In *Bac. Abr. tit.* Executors and Administrators. L. 1. (*Vol.* 3. *p.* 78. *Gwil.* ed.) it is said, " If an executor or administrator takes an obligation, in his own name, for a debt due to the testator, this shall charge him, as much as if he had received the money ; for the new security has extinguished the old right, and is *quasi* a payment to him." " So if the executor sues a person by trover and conversion, in which he has a right to recover; and afterwards, he and the defendant come to an agreement, that he shall pay the executor such a sum, at a future day, and the party fails ; this is a *devastavit*, and he shall answer *ad valorem*." For this is cited *Yelv.* 10. 2 *Lev.* 189. *Keil.* 52. 1 *Vern.* 474. The last case is said to have been affirmed, on a writ of error, in the House of Lords; and a case was there cited, by the Lord Chancellor, which, he said, was adjudged when *Pemberton* was Chief Justice, where an executor of an obligee accepted a note drawn upon a goldsmith for the money ; the goldsmith accepted the bill, and before payment, failed ; the executor afterwards brought an action upon the bond, and this matter being given in evidence, it was adjudged a good payment. So in *Comyn's Dig.* " If the executor accept note, covenant, &c., in satisfaction of a debt, which is not paid, it is payment to *him*." In *Barker* v. *Talcott & Shaw,* 1 *Vern.* 473. the Lord Chancellor held, that an administrator, by taking a note for a debt due the estate, made the debt his own ; and that the debtor, when sued by a subsequent administrator, could plead the payment of his note to the first administrator, as a bar to the action.

We advise the superior court that the plaintiff is entitled to judgment.

In this opinion the other Judges concurred.

Judgment for plaintiff.