## United States Rubber Company and Meyer Rubber Company v. John L. Peterman, et al., executors.

### Gen. No. 11,797.

1. EXECUTORS—*no power to conduct business.* In the absence of specific authority, executors have no right to carry on and conduct the business of their deceased testator.

2. EXECUTORS—*when responsible to estate.* Where executors have represented to the court under oath that certain claims of the seventh class may be paid prior to the regular time of distribution with-

U. S. Rubber Co. v. Peterman.

out prejudice to the other creditors of the estate remaining unpaid, they are personally liable for any loss resulting by reason of such premature payment and upon a final accounting they are properly chargeable with the loss sustained.

3. EXECUTORS—*extent of right to compensation.* An executor's right of compensation is limited by the statute; he is not entitled to gain from the estate represented by him any additional emolument.

4. EXECUTORS—*when liable to estate.* Advancements made by executors without authority of law are properly chargeable to them upon their final accounting.

5. EXECUTORS—*no right to sell on credit.* Executors cannot sell upon credit the goods which come into their hands to be administered without requiring security for the price.

6. EXECUTORS—*when liable to estate.* Where executors, without order of court, or other specific authority, undertake to carry out a personal contract of their deceased testator, they are personally liable for any loss resulting.

7. EXECUTORS—*right to employ clerical help.* Held, in this case, that the employment of a clerk by the executors of the estate was proper and that credit for the salary paid to such clerk should be allowed to the executors upon their final accounting.

8. EXECUTORS—*when interest for a devastavit, properly chargeable against.* Interest of ten per cent per annum as for a *devastavit* is properly chargeable against executors where they made a premature and illegal distribution of assets to the detriment of creditors.

9. EXECUTORS—*what essential to charge of interest against, for a devastavit.* Executors will not be charged with interest as for a *devastavit* unless they have used the money of the estate which they represented or unreasonably retained it after they ought to have paid it over or to have accounted for it to the court.

10. EXECUTORS—*when jointly liable as wrong-doers.* Executors are jointly liable as wrong-doers where one of them acts affirmatively and the other negatively in that he acquiesces in the affirmative acts of his co-executor.

11. APPLICATION OF PAYMENTS—*effect of election as to.* Where parties receiving payments have a right to apply them upon either one of several accounts, an exercise of such right precludes the subsequent change of the manner of application.

12. DECREE—*when exceptions to, not considered on appeal.* Where exceptions to a decree are practically waived, they will not be considered on review.

13. COSTS—*when apportionment of, not reviewed.* The matter of the apportionment of costs rests within the sound discretion of the trial court and in the absence of abuse such apportionment will not be reviewed.

Contest in court of probate. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1904. Affirmed in part and reversed and remanded in part with directions. Opinion filed March 13, 1905.

**Statement by the Court.** E. B. Preston died April 27, 1895, leaving a will, in which he appointed appellees John L. Peterman, Alfred R. Edwards and Ellen M. Preston, his wife, as his executors. Peterman had been in the employ of the deceased as a department manager for some years prior to the death of Preston. Edwards was engaged in the business of fire insurance in the city of Chicago. The will provided that "The said Ellen M. Preston, John L. Peterman and Alfred R. Edwards, trustees for that purpose by me hereby duly appointed, are to take charge immediately upon my decease and have entire control of all my estate above named, and manage and conduct the same to the best advantage."

At the time of his death Mr. Preston was engaged at Nos. 403-17 Fifth Avenue, Chicago, in manufacturing and selling the Czar wheel, rubber boots, shoes and mackintoshes, and rubber hose, reels and fire extinguishing apparatus, under the firm name of E. B. Preston & Co. In connection with the manufacture of his goods he also maintained a brass department and a blacksmith shop. At the time of his death these departments were stocked with unfinished material, the total value of which was appraised by the Probate Court appraisers at about $75,000. The estate is insolvent, the claims of creditors amounting to about $198,000, upon which three dividends, aggregating 70 per cent, have been paid.

The executors qualified on April 27, 1895, and shortly thereafter made various attempts to sell the business as an entirety, and then to sell the various departments as a whole, but without success. They thereafter proceeded to purchase a sufficient quantity of new material to complete the stock on hand, and sold the completed stock upon substantially the same lines as had been followed by Mr. Pres-

ton in his lifetime. No order was entered by the Probate Court authorizing the executors to purchase material and continue the business. The bicycle department was continued until August 15, 1895, when it was sold at the appraised value and a bonus of $2,500. The boot, shoe and mackintosh department was continued until about September 25, 1895, when it was sold at the appraised value and a bonus of $1,500. The brass department was continued until November, 1895, when it was sold at the appraised value and a bonus of $250. The fire extinguishing apparatus department was continued, the apparatus, machinery and material being sold at retail. The appraised value of the merchandise in this department was about $10,000. By October, 1897, the assets of the estate had been still further reduced until there was nothing left but a fire truck, appraised at $1,400, merchandise and machinery appraised at $994.84, office fixtures appraised at $64.52, and uncollected open accounts, aggregating $34,000, arising from the sales of merchandise during Mr. Preston's lifetime. During the five months preceding October, 1897, the executors made only five collections, amounting to $940.68, and four sales, amounting to $85.50, while from October, 1897, to August, 1899, the total receipts amounted to $340.89. During this period from October 15, 1897, to August 1, 1899, they expended $882 for rent and $930 for clerk hire. In the course of the administration the executors advanced to themselves $6,561.45, and in addition they paid to Mrs. Preston, one of the executors, $1,382. In their aggregate report, dated July 31, 1899, they stated that they had cash on hand amounting to $11,711.16, while as a matter of fact they then had on hand only about $4,000. The difference of $7,700 had been paid to appellees Peterman and Edwards on account of their compensation as executors. This was done without an order from the Probate Court.

Peterman testified that in a business such as that conducted by Mr. Preston there was a custom of selling goods on credit, which in the bicycle department was usually sixty

days, and that the executors in conducting the business were compelled by the custom of trade to sell merchandise of the estate upon credit.

In their Aggregate Report the executors report various uncollected open accounts arising from the sale of merchandise of the estate upon credit without security, which aggregated in amount $9,839.47.

At the time of Mr. Preston's death, E. B. Preston & Co. was supplying Porter & Gilmore with Czar wheels, apparently under some contract, but there is no competent evidence of that contract in the record. At the time of Mr. Preston's death Porter & Gilmore owed E. B. Preston & Company about $4,800, and after his death the executors continued to sell them wheels during the May and June following, on credit, which probably was for sixty days' time. During those months the executors received from Porter & Gilmore about $5,000, which was paid in the regular course of business and was applied by the cashier and bookkeepers of the executors in payment of the old account. When the executors prepared and filed their Aggregate Report they listed among the new accounts the account against Porter & Gilmore, amounting to $4,784.32. This report is sworn to by the executor Edwards. A suit was brought by the executors against Porter & Gilmore, and a judgment for $2,000 was obtained under an order of the Probate Court, allowing the executors to compromise the claim at that figure, but the judgment was never satisfied on account of the insolvency of Porter & Gilmore. The executor Edwards testifies that he made no investigations at the time of Mr. Preston's death as to the solvency of Porter & Gilmore.

Among the items of funeral expenses were an item of $820.75 for a Wagner car and another for $295.53 for railroad fares in transporting from Chicago to Hartford, Connecticut, several funeral guests with the remains of Mr. Preston.

Certain employees of Mr. Preston had claims against the estate aggregating $3,616.98, which are commonly referred

to as the back pay roll. The executors presented to the Probate Court a sworn petition in which they stated that these creditors could be paid in full without the rest of the creditors being damaged, and upon this representation the Probate Court authorized them to pay these creditors in full. This was done. The result was that while the general creditors received but 70 per cent of their claims, these employees were paid in full.

The executor Peterman was employed by Mr. Preston as manager of his rubber goods department at a salary of $300 a month. The executors continued to pay him the same salary as manager for nearly five months after the death of Mr. Preston, amounting in all to $1,453.83. They also allowed certain employees to overdraw their accounts to the amount of $98.50.

February 14, 1900, the Probate Court of Cook County, in which the estate was pending, passed upon the aggregate account presented by the executors, and disallowed and charged back to them the following items:

| | |
|---|---:|
| Paid for use of special Wagner car............$ | 820.75 |
| Railroad tickets for guests to funeral (less fare for the body and one attendant)........... | 295.53 |
| Amount paid to H. E. Osborn............. | 225.00 |
| Various small sums paid creditors, aggregating. | 357.82 |
| 30% of pay roll of employees............... | 1,008.48 |
| Salary paid appellee Peterman............... | 1,453.83 |
| Due from Mrs. Preston..................... | 1,382.90 |
| Balance of cash item..................... | 558.36 |
| Uncollected book accounts................. | 5,055.15 |
| Clerk hire ............................. | 930.00 |
| Total ............................. | $12,077.82 |

The executors were also ordered to file a final account within twenty days in accordance with the above finding. They prayed and were allowed an appeal to the Circuit Court from this entire order, i. e. from the refusal of the Probate Court "to allow to said executors the sum of $12,-

077.82, for which credit was claimed by said executors in an account filed in said court for disbursements claimed to have been made by said executors in the management of said estate."

The appeal was docketed upon the chancery side of the Circuit Court, and was referred to George M. Rogers as commissioner, to take the evidence and to report the same, together with his conclusions of law and fact to the court. This he did September 11, 1902. The report was objected to by appellants and by the executors. Each and all of said objections having been considered and overruled by the commissioner, upon the hearing before the chancellor it was ordered that the objections to such report stand as exceptions. January 13, 1904, by leave of court, appellants filed two additional exceptions to the said report. On the same day a final decree was entered in this cause. In it (among other things) it is ordered:

Item 1. That the item for special Wagner car.$ 820.75
and $213.03 for railway fares . . . . . . . 213.03
and for small payments which had
once been credited . . . . . . . . . . . . . . . 357.82
be charged back to the executors;

Item 2. That of the $3,616.98 disbursed on
the back pay roll, 30 per cent thereof
be charged . . . . . . . . . . . . . . . . . . . . . 1,085.09
back;

Item 3. That the sum of $1,453.83 wrongfully 1,453.83
paid to executor Peterman, be charged
back;

Item 4. That the sum of $1,382.00, wrongfully
paid to Mrs. Preston, and the sum of
$98.50 wrongfully paid to certain parties, be charged back . . . . . . . . . . . . . 1,480.50

Item 5. That of the uncollected book accounts
there should be charged back the sum
of . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,055.15
but not the sum of $4,784.32, repre-

senting the Porter & Gilmore uncol-
lected account.

Item   7.   That the item of $930 for clerk hire.     930.00
be allowed to appellees.

Item   8.   That the executors should be charged with in-
terest at the statutory rate of 10 per cent from
October 27, 1897, upon $357.82, part of item
No. 1, and upon $1,382, paid to executrix Pres-
ton; and that the executors should not be
charged interest upon any of the other sums so
charged back to them.

Item   9.   That Ellen M. Preston as executrix is liable
jointly with the other executors for all the
sums so charged back to them, except the sum of
$1,382 paid to her, for which she is personally
liable with interest at 10 per cent from Oc-
tober 27, 1897.

Item 10.   That the executors prepare and file in said
Probate Court their final account, in accordance
with the above findings and decrees within forty
days from that date.

Item 11.   That the costs therein incurred be taxed two-
thirds against the executors individually, and
one-third be paid out of the assets of the estate.

Appellants prayed for and perfected an appeal from
that part of said decree allowing the executors the sum of
$930, as set forth in item 7, also from that portion of the
decree which refuses to charge the executors with statutory
interest upon certain sums, amounting in all to the sum of
$14,440.67; also from that part of the decree in which the
court refuses to charge the executors with the sum of
$4,784.32, representing the amount of the uncollected open
account against the firm of Porter & Gilmore; and also
from that portion of the decree which directs that one-
third of the costs be paid out of the assets of the estate.

Errors were assigned in this court by appellants upon
each and every item appealed from by them. Appellees Peter-
man and Edwards filed cross-errors as to that part of the

decree which charged them with the sum of $5,055.15 of the uncollected open accounts. From the same decree the executors Peterman and Edwards prayed for and perfected an appeal upon the same record from that part of the decree charging the executors with said sum of $5,055.15, a part of the uncollected open accounts. That cause is No. 11801 in this court, and is entitled John L. Peterman and Alfred R. Edwards, Executors, etc., v. United States Rubber Company and Meyer Rubber Company.

In case No. 11816 in this court, entitled Ellen M. Preston et al. v. United States Rubber Co. et al., Mrs. Preston by writ of error upon the same record, separately assigns for error the action of the court in charging to the executors in item 1 the sums of $820.75 and $213.30; in item 2 the sum of $1,085.09; in item 3 the sum of $1,453.83; in item 4 the sum of $1,382; in item 5 the sum of $5,055.15; in item 7 with statutory interest on the sum of $1,739.82; in holding her jointly liable with the other executors for the several sums charged back in said decree, and in holding her personally for the sum of $1,382 with statutory interest thereon; and in charging the executors individually with one-third (2/3 ?) of the costs incurred in the Circuit Court.

These cases were consolidated for hearing, and have been thus considered in this court.

ISHAM, LINCOLN & BEALE, for appellants.

STEELE, MELOAN & THOMPSON, for appellees Peterman and Edwards.

ARTHUR W. UNDERWOOD and JOHN A. McKEOWN, for appellee Preston.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The executors are not, by the will of E. B. Preston, empowered to carry on the business of the testator. Thereby they are directed "to take charge immediately upon my

decease and have entire control of all my estate above named and manage and conduct the same to the best advantage." This provision imposed no other duty upon the executors, as "trustees for that purpose" than properly to care for the assets of the estate coming into their hands as executors. The appeal to the Circuit Court brought up each and all of the items for which the executors claimed credit in their account, so far as the same were disallowed by the Probate Court. That appeal was not of the items separately considered, but was an appeal from their disallowance as a whole, i. e. the sum of $12,077.82.

It is fair to said executors to say that they are not charged with having acted in bad faith in the management of this large and complicated estate. The evidence tends to show that the result of their labors was more advantageous to the creditors than a forced sale would have been. But the question still remains to be determined—did they act within the law?

Upon the hearing before the commissioner the executors admitted that the amount paid for the use of the special Wagner car from Chicago, Illinois, to Hartford, Connecticut, and return, and the sum of $295.53 expended for railway fares for that trip (less $82.50, the admitted cost of the trip for one person) considering the insolvent condition of the estate, were improvidently expended, and they were content to have these two items, $820.75 and $213.03, disallowed. At the time of the funeral of Mr. Preston his estate was considered to be solvent, and these outlays were thought to be justified. Nor did the executors contest the charging back of the item of $357.82, which twice appears as a credit in their reports. In view of these admissions and the neglect of the executors to argue these questions, we must hold that their exceptions to these several items was not seriously intended. For these reasons, and because it is just and equitable, we hold that these three items were properly disallowed by the Circuit Court.

It appears that when Mr. Preston died he was owing certain of his employees the sum of $3,616.98, which in-

debtedness is shown on what is called the back pay roll. Thinking that the estate was solvent, and so representing to the Probate Court, the executors obtained an order authorizing them to pay such employees in full, and then so did. By informing the court under oath that such payment could be made without prejudice to the other general creditors, they made themselves responsible for any damage which should come therefrom to such other general creditors. Beyond question these employees were general creditors of the estate and fall within the seventh class of creditors as classified in chapter 3 of the Revised Statutes, entitled "Administration of Estates." The insolvency of the estate being admitted, the general creditors having received but 70 per cent of their respective claims as allowed by the Probate Court, it follows that such payment was improvident and unauthorized to the extent of 30 per cent thereof, and that the decree of the Circuit Court disallowing such claim to the amount of $1,085.09 is correct.

At the date of the death of Mr. Preston appellee Peterman was, and for a long time prior thereto had been, in his employ as a manager of one of the departments of the business at a salary of $300 per month. After his appointment as one of the executors of the estate he continued to work for it, and, without an order of the Probate Court allowing it, he received from the executors the sum of $1,453.83 for such services. The rule is well settled at common law and in courts of equity that an executor is not entitled to any compensation for loss of time or for his personal services in the performance of the duties of his office. The assets of an estate in the hands of the executor are funds held in trust. As to such assets the law will not permit the executor to stand in two inconsistent positions—the one of self-interest, and the other of official duty. There is no hardship inflicted upon the executor by the enforcement of the rule, that he must work for the estate without other than the statutory compensation, because any executor may elect whether or not he will act. Willard v. Bassett, 27 Ill. 37; Hough v. Harvey, 71 Ill. 72; Cook v. Gil-

U. S. Rubber Co. v. Peterman.

more, 133 Ill. 139; Gray v. Robertson, 174 Ill. 251; Hannah v. People, 198 Ill. 88. It follows that the compensation provided for executors by the statute concerning the administration of estates is the only compensation the executor can lawfully claim or be allowed; and therefore that part of the decree which charges back this item of $1,453.83 to the executors is correct.

The executors advanced to Ellen M. Preston the sum of $1,382.90 without any authority of law. This act is indefensible. The learned chancellor is right in charging this sum back to the executors.

The sum of $98.50 made up of four payments wrongfully made by the executors to parties who were not creditors of the estate "for influence," comes within the same rule. It was proper to order the executors to charge themselves with this amount.

The executors credit themselves with $9,839.47 of uncollected open accounts arising out of sales of the merchandise of the estate by them upon credit without security, and without being authorized so to do by the Probate Court. By section 91 of the Administration Act it is provided that the executor "when it is necessary" may sell the personal property of the estate at public auction. "The sale may be upon a credit of not less than six nor more than twelve months' time, by taking note with good security of the purchasers at such sale. * * * *Provided* that any part or all of such personal property may, when so directed by the court, be sold at private sale." In Curry v. People, 54 Ill. 263, 265, this statute was considered. The action was debt upon the administrator's bond by a creditor who alleged a *devastavit* by the administrator in this, that he sold the property upon credit and took an insufficient security, whereby the purchase price became uncollectable. The court say: "That the administrator failed to discharge his duty in requiring sufficient security, and thereby became liable to the heirs and creditors." This section again came before the Supreme Court in Bowen v. Shay, 105 Ill. 132. There the administrator obtained an

order from the Probate Court authorizing him to sell the personal property at private sale, but that order contained no provision regulating the terms of sale. He sold part of the goods upon credit, taking unsecured notes for the price. By reason of the insolvency of some of the purchasers a part of the accounts became worthless. The court held that the statute requires the administrators to take security for property sold on credit, whether the sale be public or private, and if the purchase price be lost because security was not taken, the loss must fall upon the administrator and not upon the estate, and that the statute gives no power to the Probate Court to provide, in an order granting leave to sell personal property at private sale, that such sale be made without security. The rule thus established, that an executor cannot sell upon credit the goods which come into his hands to be administered, without requirng security for the price, is also a rule at common law, sustained by the overwhelming weight of authority in England and in this country. See King v. King, 3 John Ch. 552; Foster v. Thomas, 21 Conn. 285; Vreeland v. Vreeland, 16 N. J. Eq. 512; Swoyers Appeal, 5 Barr, 377. In this state of the law we are not called upon to decide whether said section 91 is mandatory or permissive, since in either case the result in this suit is the same. Of the said sum of $9,839.47, the sum of $5,055.15 stands without special excuse. Under the authorities cited the decree of the Circuit Court charging the executors with this item of $5,055.15 is correct. The remainder of said $9,839.47, namely, the sum of $4,784.32, represents an uncollected open account due from Porter & Gilmore for goods sold them by the executors during the administration of the estate. It seems that in the lifetime of Mr. Preston he and that firm had a contract relating to the sale of bicycles in certain territory, including the city of New York and its vicinity, in which a credit of sixty days was given to Porter & Gilmore if they desired it. There is no competent evidence of this contract in the record. But if there were, it was personal in its character, and the executors

were not bound to continue its performance. Section 127 of the Administration Act provides: "All contracts made by the decedent may be performed by the executor or administrator, when so ordered by the County Court." If the executors, without obtaining such an order, undertook to carry out that contract, they must bear the losses, if any were sustained. Smith v. Wilmington C. M. & M. Co., 83 Ill. 498.

At the date of the death of Mr. Preston, Porter & Gilmore were indebted to him in the sum of about $4,800. The executors continued to sell to that firm on credit without taking any security for payment until the account amounted to about the sum of $5,000. During the months of May and June, 1895, Porter & Gilmore paid the executors about $5,000. The cashier and bookkeeper of the executors credited these payments to the account which accrued prior to the death of Mr. Preston. When the aggregate report of the executors was presented, this $4,784.32 was treated by them as a new open account. It is true that when money is paid upon account and there are two items to either of which it might apply, the payor must direct its application. In case he fail so to do the payee may credit it to either account. If no designation be made by the debtor or by the creditor, the law declares that it shall be applied upon the older account. There is no evidence that Porter & Gilmore indicated as to which of these accounts the money sent by them should be applied; while it does appear that the cashier and bookkeeper of the executors, without objection being made by them, applied the payments to the old account, and that the executors treated their sales to Porter & Gilmore as a new and uncollected account. Having thus elected, it is now too late for the executors to urge that these moneys should not be treated as payments upon the old account. It follows that the decree of the Circuit Court that the executors should not be charged in their accounts with said sum of $4,784.32 is erroneous, and must be and is reversed, with directions to charge the executors with said sum.

It appears from the evidence that from October 13, 1897, to July 31, 1899, the executors in their conduct of the estate paid a clerk ten dollars per week and hired a room in the Women's Temple at a rental of $35 per month. In October, 1897, there remained about $37,000 of open accounts, and about $2,500 of machinery and merchandise. The clerk looked after these assets, kept the books, attended to correspondence, made and checked out the third dividend and talked with those persons who came to inquire about the estate. It is true that during this period only a very small amount of the open accounts was collected, but we are not prepared to say that the circumstances did not justify the executors in the employment of such clerk; and therefore we affirm the decree of the court which credits the executors with the sum of $930 for such clerk hire.

The executors advanced to Mrs. Preston $1,382. This was an illegal distribution. Had it not been made it would have been available for distribution among the creditors. The executors will not be heard to say that they did not know that such act was a *devastavit*. The statute of 1872 provides, as a penalty for such acts, the payment of interest upon sums retained by executors in their possession or control, at the rate of ten per cent per annum at a period of two years and six months from the date of letters testamentary. The accounts filed by the executors show that such letters were issued to them April 27, 1895. Hence the thirty months provided by statute expired October 27, 1897. The decree of the Circuit Court charging the executors with interest at the rate of ten per cent per annum from the last mentioned date upon said sum is approved.

The sum of $357.82, for which the executors twice took credit, falls in the same category; and the finding of the Circuit Court charging them with interest upon that sum is approved.

The executors improperly paid executor Peterman the sum of $1,453.83 for services rendered the estate. We must hold that they were bound to know that such pay-

ment was illegal and unwarranted. It follows that interest upon this sum must be charged to the executors at the rate of ten per cent per annum from October 27, 1897.

As to the remaining items charged back to the executors, we do not find in the evidence that as to any one of them the acts of the executors relating thereto were wilful, nor do we find from the circumstances that as to any of such items the executors must be held to know that such acts were unlawful. From the time of the filing of such aggregate report to the present date the delay in the disposition of the matters here under consideration must be attributed largely to the crowded condition of the dockets of the courts, and but little of that delay can be justly imputed to the executors.

This statute charging executors with interest at the rate of ten per cent per annum is penal in its character, and before such a penalty is imposed upon them their liability must be clearly established. Gilbert v. Bone, 79 Ill. 343. We do not find a case made against the executors in regard to such remaining items which calls upon a court of equity to thus penalize them. Upon this subject the court has a large discretion, and it will not impose the burden unless the circumstances of the particular case clearly demand such action. The rule is that the executor will not be charged with interest unless he has used the money or unreasonably retained it after he ought to pay it over or ought to have accounted for it to the court. Rowan v. Kirkpatrick, 14 Ill. 10. Any stricter rule would not only be inequitable, but it would deter responsible and competent men from accepting such trusts. We are therefore of the opinion that as except to the sums of $1,382, of $357.82, and of $1,453.83, the executors should not be charged with interest upon any of the sums charged back to them in their accounts.

Ellen M. Preston, one of the executors, claims that under the evidence and the law applicable thereto, she is not jointly liable with the other executors for any part of the sums charged to the executors except the item of funeral

expenses, the item of $357.82, and the item of $1,382 paid
to her. The evidence upon this question is furnished by
Mrs. Preston. She says: "I am the widow of the de-
ceased, E. B. Preston. My residence is in Colorado
Springs, Colorado, where I have resided for the past three
years. At the time of my husband's death I was in Chi-
cago, but knew nothing of his financial condition. I was
one of the executors, but the administration of the estate
was run by Peterman and Edwards. I was aware that the
business was being conducted by the executors, and it was
with my consent. I do not remember when I first learned
that the estate was insolvent. It was in the year 1895. .I
had not very much to do with the·management of the es-
tate. Still, I was satisfied. I think John Peterman ought
to have known. I owned some of the buildings in..which
the business of the estate was being conducted. He rented
that one, 411 and 415; that belonged to me. I received
rent for the use of the buildings by the executors." In
short she says that she was aware that the business was
being conducted by the other two executors, that this was
with her consent, and that she was satisfied with their man-
agement of the estate. Where an executor is cognizant of
a breach of trust by his co-executor, and acquiesces ·in· it,
he is responsible with such wrong-doer for any loss which
results therefrom to the estate. 17 Am. & Eng. Ency.
(2nd ed.), 620; English v. Newell, 42 N. J. Eq. 81;
Fonte v. Horton, 36 Miss. 355; *In re* assgt. of Richart &
Campbell, 58 Ill. App. 94. We are of the opinion that
Mrs. Preston is jointly liable with the other executors. ·

The distribution of the costs herein incurred is a matter
within the sound discretion of the Circuit Court. We see
no reason why we should disturb the action of that court
in that regard.

The decree of the Circuit Court is sustained by the evi-
dence in all particulars except as indicated in the forego-
ing opinion.

The decree of the Circuit Court will be affirmed, except
in so far as it fails and omits to charge against the execu-

tors the sum of $4,784.32, and also fails and omits to charge against them interest at the rate of ten per cent per annum upon the sum of $1,453.83 paid to executor Peterman; as to each of said failures or omissions the decree will be and is reversed and remanded, with directions to charge against the executors, John L. Peterman, Alfred R. Edwards and Ellen M. Preston said sum of $4,784.32, and interest as aforesaid upon said sum of $1,453.83.

*Affirmed in part and reversed and remanded in part with directions.*